Raymond R. LOCHHEAD, Plaintiff,

v.

Enes "Sam" ALACANO, George D. Morgan, William G. Gee, David L. Reynolds and Don J. Edwards, Defendants.

Civ. No. 86–C–0875A.

United States District Court,
D. Utah, C.D.

Oct. 7, 1988.

Rodney G. Snow, Neil A. Kaplan, Salt Lake City, Utah, for plaintiff.

Richard W. Casey, Salt Lake City, Utah, for defendants.

ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

ALDON J. ANDERSON, Senior District Judge.

On June 29, 1988, the court heard oral arguments regarding defendants' Motion

to Dismiss Plaintiff's Third Amended Complaint. After studying these arguments, the parties' supporting memoranda, and the relevant legal authorities, the court is now prepared to rule. The court's determination is based upon the following facts and legal analysis.

Raymond R. Lochhead first brought suit in September 1986, claiming that defendants Enes "Sam" Alacano, George D. Morgan, William G. Gee, David L. Reynolds, and Don J. Edwards[1], acting as officers, directors and majority shareholders of Arctic Circle, Incorporated [Arctic Circle], fraudulently adopted and executed a stock option plan. The acts associated with those events allegedly injured Mr. Lochhead as a minority shareholder of Arctic Circle by decreasing the amount of converted stock he would have otherwise received when Arctic Circle merged with Quaker State Minit–Lube, Incorporated [Quaker State]. Although this basic allegation remains unchanged, Mr. Lochhead has continued to refine his legal theories through a series of amended complaints.

In ruling on the First Amended Complaint, the court dismissed Mr. Lochhead's claim for breach of fiduciary duty, finding it could be brought only as a derivative suit and not by an individual shareholder. Additionally, plaintiff's claims based upon state common law fraud and federal violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) [Section 10(b)], and its corollary rule 10b–5, 17 C.F.R. § 240.10b–5 [Rule 10b–5], were dismissed for failure to plead those claims with particularity. *See Lochhead v. Alacano,* 662 F.Supp. 230, 231–32, 235 (D.Utah 1987).

A Second Amended Complaint was filed. Mr. Lochhead thereafter retained new counsel and the Third Amended Complaint —the present subject for the court's consideration—was substituted. The Third Amended Complaint alleges common law fraud and federal securities law violations as causes of action and, additionally, states racketeering claims under the federal Racketeering Influenced and Corrupt Organization Act [RICO].[2]

## I. FACTUAL BACKGROUND

Plaintiff relies upon a single set of alleged facts to underpin all causes of action. These facts present a unique set of circumstances for the court's consideration.

It is undisputed that the five defendants, as directors, officers and majority shareholders, controlled the affairs of Arctic Circle during the time period relevant to this suit. On or about September 24, 1982, defendants purportedly approved a stock option plan [1982 Stock Option Plan or Plan] as sole members of the Arctic Circle Board of Directors. However, Mr. Lochhead alleges that the 1982 Stock Option Plan was never adopted at a duly noticed and properly held meeting of the shareholders as required by the Plan. Plaintiff states that a purported special meeting of Arctic Circle shareholders did not take place on June 25, 1982, or, if this meeting was held, notices and proxies were not provided. Thus, the alleged meeting did not meet legal requirements.

Plaintiff further contends that at some unidentified point in time defendant Morgan prepared, signed and maintained false and fraudulent notice and meeting minutes in Arctic Circle's minute book in concert and conspiracy with the other defendants. Plaintiff alleges:

[t]he false minutes of the purported June 25, 1982[,] meeting represent that each of the five (5) defendants, plus nine (9)

---

**1.** Kathleen M. Alacano, Bernice F. Reynolds, Don J. Edwards as Trustee of the Don Edwards Family Trust, Quaker State Oil Refining Corporation, Quaker State Minit–Lube, Incorporated, and Commercial Security Bank were also named as defendants in the original complaint.

**2.** Other pretrial motions relating to the First Amended Complaint, such as plaintiff's Motion for Reconsideration of This Court's Dismissal of

Plaintiff's Breach of Fiduciary Duty Claim in Light of New Utah Case Law or, in the Alternative, for Certification of the Question to the Utah Supreme Court; Plaintiff's Motion to Lift Stay of Discovery; and defendants' Motion for Entry of Judgment on Counts I and II of Plaintiff's First Amended Complaint, have been resolved by the court and are not presently at issue.

other shareholders of Arctic [Circle] were present at the meeting or represented by proxy at the meeting. In fact, none of the other nine shareholders received notice, were present at any alleged meeting on June 25, 1982, or submitted proxies for such a meeting.

Third Amended Complaint at 9. In this way, any legal deficiencies or falsehoods regarding the meeting and its conduct were further misrepresented in the meeting minutes.

On or about July 30, 1985, the merger of Arctic Circle into Quaker State was publicly announced. Between August 5, 1985, and October 11, 1985, defendants exercised their options to purchase the full amount of stock available under the 1982 Stock Option Plan, a total of 24,150 shares. Defendants benefitted from obtaining the stock in several ways. First, under the terms of the merger, a fixed number of Quaker State shares were exchanged regardless of the number of Arctic Circle shares outstanding. Thus, defendants received proportionally more Quaker State stock than otherwise would have occurred. Second, plaintiff points out that the 1982 Stock Option Plan allowed defendants to purchase shares at the fair market value at the time the option was granted, rather than the price at the time of the option's exercise, and to receive preferential tax treatment on the difference in value. *See* Internal Revenue Code of 1954, 26 U.S.C.A. § 422A [IRS Section 422A].

Mr. Lochhead alleges a fraudulent scheme in that defendants knew the 1982 Stock Option Plan was not adopted and the shares issued to them were invalid:

In a further attempt to conceal the invalidity of the 24,150 shares of Arctic [Circle] stock that were issued to them after the announcement of the merger, ... defendants Alacano, Morgan, Reynolds, Gee and Edwards each signed, on or about November 14, 1985, a certificate required and relied upon by Arctic [Circle's] counsel, Quaker State, plaintiff and the other Arctic [Circle] shareholders in determining the number and validity of shares to be exchanged in the merger.

In the certificate, each of the defendants falsely and fraudulently represented that the notice and minutes of the purported June 25, 1982, meeting were true and correct.

Third Amended Complaint at 9. Thus, plaintiff asserts that because of these and other related false statements certified to in the Directors' and Officers' Certificate [or Certificate], Arctic Circle's counsel issued a legal opinion on November 14, 1985, concluding that the 1982 Stock Option Plan had been validly adopted and that the defendants held valid stock options after the merger announcement. Additionally, when the proxy and prospectus materials relating to the merger were mailed in interstate commerce to plaintiff and other shareholders, those materials failed to disclose that the defendants held 24,150 shares of Arctic Circle stock which otherwise would not have been included as part of the total outstanding stock of Arctic Circle. Plaintiff claims that, as a result, shareholders approved the merger at a shareholders' meeting on November 14, 1985, and subsequently exchanged their Arctic Circle stock for Quaker State stock at a now disputed ratio. Plaintiff complains that he alone would have received 30,194 more shares of Quaker State stock had not the purportedly invalid stock options been exercised.

Plaintiff also alleges that, in order to qualify for special tax benefits, it was necessary for each defendant to represent to the IRS that the 1982 Stock Option Plan was validly adopted by the shareholders. Plaintiff essentially claims that the IRS relied on false statements and did not inquire into the matter. Hence, plaintiff and the other shareholders did not learn of the misrepresentation.

In support of their motion to dismiss, defendants first argue that plaintiff lacks standing since the claims he alleges may only be pursued in a shareholder's derivative action. Second, defendants maintain that the factual allegations as stated in the Third Amended Complaint fail to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure [or Rule 9(b)]. Furthermore, defendants maintain that the Third Amended Com-

plaint is legally insufficient in two respects: a) plaintiff's claims of damages did not arise in connection with the alleged acts and, consequently, the requisite causation is lacking; and b) the racketeering claims do not meet the pattern requirement for RICO causes of action. Therefore, it is contended that the Third Amended Complaint failed to state a cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6) [or Rule 12(b)(6)].

## II. STANDING

In his Third Amended Complaint, Mr. Lochhead contends that he suffered a direct and individualized loss when his proportionate shareholder's interest in Arctic Circle was reduced due to defendants' fraudulent adoption of the 1982 Stock Option Plan. Defendants argue that, similar to the claims set out in the First Amended Complaint, the claims now asserted can only be brought as a shareholder's derivative action, giving the plaintiff no standing to individually bring this suit.

### A. Derivative Action Rule

State standing rules apply to plaintiff's claim of common law fraud, *see Drachman v. Harvey*, 453 F.2d 722, 726–27, 730 (2nd Cir.1972) (*reh'g* en banc), while federal law determines whether plaintiff has standing to assert federal violations in an individual action. *Id.* at 726–30. However, the precepts used to classify a cause of action as either derivative or individual spring from common law and are broadly employed unless modified by state or federal law. *See generally* Fletcher, Cyc Corp §§ 5908–5937 (Perm Ed). Thus, even though the parties' or the court's own research have located little precedent demonstrating the precise facts of this unusual case, well established principles of the derivative action rule and its exceptions can be applied.

In his First Amended Complaint, plaintiff alleged that defendants breached a fiduciary duty owed to him when they illegally deprived him of the value of certain Quaker State stock. The court observed that under Utah law "[a]s to corporate directors and officers, ... the duty is owed to the corporation itself and to the shareholders

only collectively." *Lochhead v. Alacano*, 662 F.Supp. at 232. *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980) ("in Utah it is clear that [a fiduciary] relation is to the stockholders *collectively*") (emphasis in original). Thus,

> "[w]hile an injury to a corporation resulting from wrong doing, fraud or negligence by corporate officers operates, indirectly, as an injury to stockholders, the injury to stockholders is secondary and the injury to the corporation is primary. It is for the corporation, therefore, to institute action for wrongs inflicted upon it by corporate officers or to set aside contracts made in fraud of corporate rights."

*Morris v. Ogden State Bank*, 84 Utah 127, 28 P.2d 138, 143 (1934) (quoting Fletcher, Cyc Corp, § 4051). *See Richardson v. Arizona Fuels Corp.*, 614 P.2d at 640 (citing the *Morris* court with approval). The court dismissed plaintiff's First Amended Complaint finding, in part, that plaintiff's claim could only be brought derivatively on behalf of himself and other minority shareholders.

In his Third Amended Complaint, Mr. Lochhead presents a different legal theory. He now relies on the reduction in his proportionate ownership interest in Arctic Circle prior to the merger and the resulting change in ratio when Arctic Circle stock was exchanged for that of Quaker State. Plaintiff concedes that he might be limited to a derivative suit on behalf of the corporation if defendants' only acts had been to grant stock options to themselves for less than adequate consideration and to falsify corporate documents such as the notice of shareholders' meeting and the meeting minutes. *See Elster v. American Airlines, Inc.*, 100 A.2d 219, 222 (Del.Ch. 1953) (all stockholders incidentally affected by alleged corporate injury). However, plaintiff claims that under the facts of this case, defendants' alleged fraudulent acts transformed an otherwise incidental injury into a direct injury and an easily calculable loss. *See Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 599, 460 P.2d

464, 471 (1969) (court allowed individual action where a substantial number of shareholders suffered nonincidental injury). Mr. Lochhead demonstrates his claimed loss—$728,405.00 plus interest—by calculating the value of the shares of Quaker State stock which he would have otherwise received at the time of merger. As a remedy, plaintiff does not seek rescission of the merger, but asks to recover this amount of lost ownership interest, plus punitive or exemplary damages, and related costs.

Factual allegations in a complaint may be capable of supporting either a derivative or an individual action by minority shareholders. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (merger proxies under federal Williams Act gave rise to both derivative and direct causes of action). In these instances, the injury is to both the corporation and the individual stockholder. *Elster v. American Airlines, Inc.,* 100 A.2d at 222. "[T]he majority rule permits a stockholder who has been individually injured to sue in his own right even if the corporation is also injured." *Jensen v. Voyles,* 393 F.2d 131, 133 (10th Cir.1968). "To determine whether a complaint states a derivative or an individual cause of action, [a court] must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention." *Lipton v. News Int'l, Plc,* 514 A.2d 1075, 1078, 1079 (Del.1986) (stock exchange agreement under Delaware law supported individual cause of action). *See Crouse-Hinds Co. v. Internorth, Inc.,* 518 F.Supp. 390, 402, 403 (N.D. N.Y.) (takeover attempt spawned corporate shareholder suit under state and federal standing requirements), *appeal dismissed in part, rev'd in part on other grounds,* 634 F.2d 690 (2nd Cir.1980); *cf. Elster v. American Airlines, Inc.,* 100 A.2d at 223 (plaintiff did not contend his preemptive rights were violated under Delaware corporate law where stock was unissued and action was derivative).

### B. Dilution of Ownership Interest Exception

■ Plaintiff's Third Amended Complaint recites that his injury stemmed from a dilution of his stockholder's ownership interest. However, defendants essentially argue that plaintiff's claims are better classified as alleging a diminution in value of plaintiff's stock. This distinction forms an initial basis for a determination as to whether plaintiff has individual standing to sue. A diminution in value of a shareholder's stock is a loss recoverable only by the corporation and does not give rise to an individual cause of action. Thus, courts have held that a shareholder does not have standing to bring a direct cause of action when the damage alleged is the diminished value of corporate shares. *See e.g., Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 315, 317 (6th Cir.) (individual cause of action could not be maintained under federal securities laws where injury was diminished value to a shareholder's stock), *vacated in part on other grounds,* 828 F.2d 1145 (1987); *Rand v. Anaconda-Ericsson, Inc.,* 794 F.2d 843, 849 (2nd Cir.1986) (decrease in value of firm with corresponding decrease in value of plaintiff's shares does not give rise to individual action under either federal antitrust laws or RICO), *cert. denied,* 479 U.S. 587, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 348 n. 15 (citation omitted) (N.D.Ill.1984) ("any RICO cause of action for diminution in the value of a corporation belongs to the corporation, not to the corporation's individual stockholders"); *Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692, 699 (S.D.N.Y. 1985) ("only the corporation may bring a RICO action to redress injury suffered by the corporation").

■ Under the facts plaintiff alleges, the overall value of Arctic Circle at the time of merger was unaffected by defendants' actions since its purchase price was fixed irrespective of the number of shares outstanding. An increase in the number of outstanding shares arguably lessened the value of each share and was equivalent to a decline in stock price. Defendants avoided any loss of value through their purchase of additional shares, while plaintiff and other minority shareholders bore the burden of the lost ownership percentage. However,

in contrast to diminution in value cases, neither Arctic Circle nor Quaker State suffered any corporate injury as a whole, even though the diminished value of each individual share could arguably be calculated. *Cf. Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d at 313 (bank declared insolvent); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d at 844 (corporation forced into involuntary bankruptcy); *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. at 343 (company petitioned for voluntary bankruptcy); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. at 694 (company ceased operation following financial losses). Consistently, the Tenth Circuit has acknowledged that a plaintiff alleging federal securities fraud may have individual standing where the corporation has suffered no loss. *Jensen v. Voyles*, 393 F.2d at 132–33. Plaintiff has contended that Arctic Circle maintained its financial integrity throughout the merger transaction and, similarly, Quaker State can claim no loss. Under these circumstances, the court cannot agree that Mr. Lochhead's claims can only be characterized as a diminution in value or that he is limited to suit on behalf of the corporation.

"[A] shareholder has a direct right to attack a corporate transaction which dilutes his proportionate ownership." *Gordon v. Fundamental Investors, Inc.*, 362 F.Supp. 41, 45 (S.D.N.Y.1973).

> The right of a stockholder to maintain an existing proportion between his stock and the entire capital stock is a property right of which, under ordinary circumstances, he cannot be deprived by an increase of stock. A stockholder has a personal right of action to attack and avoid a fraudulent increase of stock made and issued to another which results in depriving him of his relative position as a stockholder. A suit to protect this personal, primary right is not derivative because it is not maintained in the right of the corporation or brought on its behalf.

*Horwitz v. Balaban*, 112 F.Supp. 99, 101–02 (S.D.N.Y.1949) (citation omitted). *See Amen v. Black*, 234 F.2d 12, 23–24 (10th Cir.) (under Kansas law, proportionate

stockholders' interests had to be maintained during sale of stock), *cert. granted*, 352 U.S. 888, 77 S.Ct. 127, 1 L.Ed.2d 84 (1956), *cause remanded as moot*, 355 U.S. 600, 78 S.Ct. 530, 2 L.Ed.2d 523 (1958) (per curiam); *Crouse–Hinds Co. v. Internorth, Inc.*, 518 F.Supp. at 402 (right to "exercise ... relative voice in corporate affairs" preserved under federal and New York state law); *Jones v. Ahmanson & Co.*, 81 Cal. Rptr. at 599, 460 P.2d at 471 (use of power by majority shareholders "must benefit all shareholders proportionately" under California law).

Plaintiff complains that his "percentage ownership in Arctic [Circle] was diluted...." Third Amended Complaint at 7. He asserts that defendants should have revealed the true facts and circumstances regarding exercise of the 1982 Stock Option Plan on several occasions, including the time "[w]hen plaintiff tendered, sold and exchanged his 'diluted' stock for Quaker State stock." *Id.* at 15. The United States Supreme Court has recognized that even a threatened dilution of a shareholder's stake may be sufficient to confer individual standing for a suit. *Alleghany Corp. v. Breswick & Co.*, 353 U.S. 151, 160, 77 S.Ct. 763, 769, 1 L.Ed.2d 726 (1957). In *Alleghany Corporation*, minority shareholders of an investment company which acquired control of a railroad had standing to sue when the Interstate Commerce Commission approved a convertible stock issue. The possibility that minority shareholders would suffer financial injury if their equity was diluted constituted a direct feared harm and entitled them to seek injunctive relief. *Id.* at 158–60, 171, 77 S.Ct. at 768–69, 774. Mr. Lochhead asserts that he, too, could have sought injunctive relief or other legal remedies prior to the merger had not defendants fraudulently concealed the true facts of the 1982 Stock Option Plan. Hence, it is argued, his individual standing to sue does not dissolve when his injury is transformed into a further calculable loss through the merger transaction.

### C. Direct and Distinct Injury Feature

■ Most individual causes of action are recognized when the injury to one or more

shareholders is direct and distinct from the collective body of shareholders or from the corporate entity. For example, under a federal securities fraud claim, individual depositors could sue bank officers for wrongdoing after the bank went into receivership with the Federal Deposit Insurance Corporation and was sold. *Adato v. Kagan*, 599 F.2d 1111, 1116–17 (2nd Cir. 1979). The court observed that federal banking laws do not abrogate the rules of standing nor their exceptions. Since these depositors suffered an injury that was "not common to all," they were not limited by the general rule that "only the bank or its receiver may sue for [depositors'] recovery." *Id.* at 1117. Similarly, a creditor could bring a civil RICO action alleging bankruptcy fraud where the actions of defendant officers, directors, and shareholders did not harm the debtor corporation, but created an injury specific to the creditor. *Bankers Trust Co. v. Feldesman*, 648 F.Supp. 17, 27 (S.D.N.Y.1987) (as amended). *Cf. Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d at 314, 318 (direct and personal injury not demonstrated under federal banking and securities laws); *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 616 (9th Cir.1987) (did not allege that acts caused personal injury under Montana corporation law); *In Re Longhorn Securities Litigation*, 573 F.Supp. 255, 273 (W.D.Okla.1983) (all bank's depositors suffered when bank failed and their injury was not unique). The outstanding stock of a corporation is the property of the shareholders and not the property of the corporation. "[T]he corporation, as such, has no interest in it or in dealings among stockholders with respect to their stock." *Geiselmann v. Stegeman*, 443 S.W.2d 127, 131 (Mo.1969). Thus, individual shareholders suffer a direct and distinct injury when other shareholders, acting as officers and directors, wrongfully issue shares of corporate stock.

In sum, the gravamen of plaintiff's Third Amended Complaint is that he suffered a dilution of his ownership interest through defendants' fraudulent acts. Under the alleged circumstances of the merger, neither Arctic Circle nor Quaker State were adversely affected, although a decrease in the average price of shares could arguably be calculated. As the cases indicate, a derivative suit based upon injury to the corporation through diminution in stock value could not provide an undisputed and sole basis for standing. Mr. Lochhead had the right to maintain his relative status as a stockholder and to protect his proportionate ownership interest against fraudulent dilution. The alleged injury to plaintiff and other minority shareholders is direct and distinct from the now defunct Arctic Circle, the new Quaker State entity, and the defendant majority shareholders.

When a plaintiff comes to federal court seeking a remedy, the court has power to apply the law as it fits the individual facts presented. *See J.I. Case Co. v. Borak*, 377 U.S. at 432–33, 84 S.Ct. at 1559–60 (private enforcement of federal securities laws upheld); *Gordon v. Fundamental Investors, Inc.*, 362 F.Supp. at 45 (federal court may fashion a remedy to fit unusual circumstances) (citation omitted). The facts as alleged in the Third Amended Complaint uniquely fit a recognized exception to the derivative action rule. Thus, in contrast to the First Amended Complaint, the legal theory upon which plaintiff now rests provides standing for plaintiff to maintain his causes of action.

### III. PARTICULARITY

Since all of Mr. Lochhead's claims are based upon allegations of fraud, they are subject to the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Compiler's Notes, Utah R.Civ.P., Rule 9(b) ("rule is substantially similar" to the federal Rule 9) (1977). The sufficiency of the factual allegations must be construed favorably to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Only if there is no set of facts upon which plaintiff would be entitled to relief can he be denied the opportunity to present evidence supporting his claims. *Id.* (citation omitted).

In reviewing the First Amended Complaint, the court ordered that "claims for Rule 10b–5 violations and common law

fraud are dismissed pursuant to Rule 9(b) with leave to amend...." *Lochhead v. Alacano,* 662 F.Supp. at 235. Defendants argue that these deficiencies continue throughout all causes of action now set forth in plaintiff's Third Amended Complaint.

The circumstances of a claim of common law fraud[3] and federal securities law violations[4] must all be pleaded with particularity. *See Dahl v. Gardner,* 583 F.Supp. 1262, 1263, 1267 (D.Utah 1984). A RICO claim based upon fraud is also subject to stringent pleading requirements.[5] *See Cook v. Zions First Nat'l Bank,* 645 F.Supp. 423, 425 (D.Utah 1986); *see also* Goldsmith, *Civil RICO Reform: The Basis for Compromise,* 71 Minn.L.Rev. 827, 837 n. 44 (1987). Similarly, a charge of civil conspiracy to commit fraud cannot be general or conclusory, but must contain specific factual allegations.[6] *Beck v. Cantor,*

3. Under Utah law, fraudulent misrepresentation requires:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980).

4. The essential elements of a Section 10(b) or Rule 10b–5 claim for damages are: (1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud, (4) in connection with the purchase or sale of securities and (5) furthered by defendant's use of the mails or any facility of a national securities exchange.

*Lloyd v. Industrial Bio–Test Laboratories, Inc.,* 454 F.Supp. 807, 810 (S.D.N.Y.1978) (footnotes omitted).

The Arctic Circle stock sold by plaintiff and the Quaker State stock purchased by plaintiff meet the definition of a "security" under the Securities Act of 1934. 15 U.S.C.A. § 78c(a)(10). The statutory coverage of "purchase" and "sale" includes the exchange of stock for new shares. *SEC v. National Securities, Inc.,* 393 U.S. 453, 462, 466–67, n. 8, 9, 89 S.Ct. 564, 569, 571–72 n. 8, 9, 21 L.Ed.2d 668 and accompanying text (1969) (complaint based upon fraudulent misrepresentations in a merger). Mr. Lochhead claims that the defendants made use of the mails, an instrumentality of interstate commerce, to carry out their scheme to defraud in connection with the sale and purchase of securities.

5. Plaintiff claims that defendants engaged in a pattern of racketeering to carry out their fraudulent schemes. The alleged illegal acts include not only fraud in the sale and purchase of securities, *see* n. 4, *supra,* but fraud in the mailing of each preliminary proxy statement and prospectus containing the purported false statements. 18 U.S.C.A. § 1341. Plaintiff asserts that these activities also allowed defendants to illegally obtain certain tax advantages under IRS Section 422A. These fraudulent acts allegedly comprise two substantive causes of action under RICO.

First, 18 U.S.C.A. § 1962(b) [Section 1962(b)] is a little-used RICO cause of action which essentially prohibits the use of racketeering activity to acquire any interest or control of an enterprise. *Hunt v. Weatherbee,* 626 F.Supp. 1097, 1102 (D.Mass.1986) (under Section 1962(b), a female carpenter could allege that threats and coercion by two union officials constituted a pattern of harassment and discrimination against female union workers and were used to maintain control over an interest in the carpenters' union). Plaintiff claims that defendants' illegal conduct in obtaining the invalid stock enabled them to first acquire an additional interest in the Arctic Circle enterprise, to then acquire an additional interest in the Quaker State enterprise during the merger, and finally to fraudulently claim federal tax benefits.

Second, under 18 U.S.C.A. 1962(c) [Section 1962(c)], a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Plaintiff Lochhead essentially claims that defendants, as officers, directors, and majority stockholders of the Arctic Circle enterprise, conducted or participated in the affairs of Arctic Circle through the alleged fraudulent acts. *See Condict v. Condict,* 826 F.2d 923, 926 (10th Cir.1987) (complaint purported to allege defendants conducted or participated in the affairs of Condict Ranch, a partnership enterprise, through a pattern of racketeering activity).

6. First, plaintiff claims that defendants conspired to carry out securities fraud activities, specifically the alleged falsification of the Arctic Circle notice of shareholders' meeting and meeting minutes, and the alleged false statements in the Directors' and Officers' Certificate. "[L]ike its criminal counterpart, proof of conspiracy to violate Rule 10b–5 requires a plaintiff to prove both an agreement to do the unlawful act and

*Fitzgerald & Co.*, 621 F.Supp. 1547, 1552 (N.D.Ill.1985).

> One of the primary reasons for Rule 9(b) and the characteristic that sets fraud claims apart from many other causes of action is that accusations of moral turpitude should not be lightly made. This consideration is especially relevant where, as here, the plaintiff broadly accuses a large number of defendants of intentional wrongdoing.

*Lochhead v. Alacano*, 662 F.Supp. at 234. Furthermore, Rule 9(b) requires that pleading constitute notice so that each defendant can respond to the specific allegations with which they are accused. *Cook v. Zions First Nat'l Bank*, 645 F.Supp. at 425. Hence, the "particularity requirement must be read in conjunction with the general principles of notice pleading ... which requires 'a short and plain statement of the claim' for relief." *Dahl v. Gardner*, 583 F.Supp. at 1267 (citing Fed.R.Civ.P. 8(a)). Thus, although a balance between the two rules must be struck, the policy of requiring notice to adverse parties is fundamental to our consideration.

Defendants argue that plaintiff's factual allegations are not sufficiently particularized in three major ways: 1) plaintiff has failed to allege the specific fraudulent acts committed by each defendant; 2) plaintiff's allegations of conspiracy are entirely conclusory; and 3) a factual basis to support a finding of scienter in any of the defendants has not been set forth.

### A. Individualized Acts

The court found that the First Amended Complaint was defective under Rule 9(b) standards for particularity in several respects: 1) plaintiff failed to specify facts from which a reasonable inference could be drawn as to which of the several defendants had the duty to send notice of the

an overt act in furtherance of the conspiracy." *Epprecht v. Delaware Valley Mach., Inc.*, 407 F.Supp. 315, 320 (E.D.Pa.1976). *See Arroyo v. Wheat*, 591 F.Supp. 141, 144 (D.Nev.1984).

Second, plaintiff claims that defendants conspired together to carry out their illegal conduct in violation of Sections 1962(b) and (c). It is "unlawful for any person to conspire to violate any of the" substantive RICO provisions. 18

shareholders' meeting; 2) plaintiff broadly claimed that " 'at least one' of the defendants, George Morgan, falsified the minutes of the ... meeting"; and 3) plaintiff "fail[ed] to state the facts upon which [he] base[d] his belief that no meeting had occurred...." *Lochhead v. Alacano*, 662 F.Supp. at 234. Defendants contend that the Third Amended Complaint remains factually insufficient and still fails to adequately specify the purported acts of each defendant.

In the Third Amended Complaint, plaintiff has alleged that any purported notice and minutes of the special shareholders' meeting were false and fabricated. Furthermore, each defendant knowingly certified to these falsities in the Directors' and Officers' Certificate as part of the merger. Mr. Lochhead states that without discovery additional facts remain within the exclusive knowledge of the defendants and preclude plaintiff from setting forth more detailed descriptions of each defendant's acts. Plaintiff urges the court to agree that the alleged acts are recited with sufficient particularity to support his claims of fraud as to each defendant under the circumstances of this case.

■ A plaintiff may not justify a failure to plead fraud with specificity by arguing that he cannot meet the standards of Rule 9(b) without discovery. That is, a plaintiff cannot use discovery to flesh out details of a claim. *Beck v. Cantor, Fitzgerald & Co.*, 621 F.Supp. at 1552. Otherwise, a cause of action "which by objective standards may have very little chance of success at trial has a settlement value to plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment." *Blue Chip Stamps v. Manor Drug Stores*, 421

U.S.C.A. § 1962(d) [Section 1962(d)]. Section 1962(d) targets only agreements to violate the RICO provisions themselves. *See United States v. Elliott*, 571 F.2d 880, 902, *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (the central element in a RICO conspiracy is not an agreement to commit the underlying predicate acts but, rather, to commit a statutorily defined RICO violation).

U.S. 723, 740, 95 S.Ct. 1917, 1927, 44 L.Ed. 2d 539 (1975). Yet, as some courts have noted, an exception is found in claims of corporate fraud where a plaintiff "cannot be expected to have personal knowledge of the facts constituting the wrongdoing. In such cases, a complaint based upon information and belief is sufficient if it includes a statement of the facts upon which the belief is based." *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982) (securities law claims were sufficiently particularized despite "each and all" phrasing of the complaint). Furthermore, more complex transactions require less specificity in pleading and, in these matters, the paragraphs of the complaint cannot be isolated but must be read as a whole. *Wabash Valley Power Assoc., Inc. v. Public Serv. Co. of Ind.*, 678 F.Supp. 757, 762 (S.D.Ind.1988) (RICO claim adequately alleged a fraudulent scheme involving public utility regulatory laws).

In *Cook v. Zions First Nat'l Bank*, the district court required that the factual basis for each claim "set forth in specific terms the time, place, content, and manner of each defendant's alleged material misrepresentations or otherwise fraudulent conduct." 645 F.Supp. at 425 (borrowers who brought suit against bank and four individual defendants failed to correct deficiencies in original complaint); *cf. Zatkin v. Primuth*, 551 F.Supp. at 42 (statements as to time, place and nature of fraudulent acts were sufficiently stated). The *Lochhead* record shows that each defendant signed the Directors' and Officers' Certificate on November 14, 1985. In performing this act, each defendant certified in pertinent part that, with certain exceptions not relevant here, all books and records of Arctic Circle were materially complete and correct and maintained according to good business and accounting practices. In regard to the 1982 Stock Option Plan, each defendant certified that

35. ... [T]he 1982 Stock Option Plan was in full force and effect as of the date thereof.

36. The ... 1982 Stock Option Agreements were made as of the 1st day of October, 1982 by Arctic Circle and [defendants]....

....

40. The document entitled "notice" of the special meeting of the Stockholders of Arctic Circle ... and by reference made a part hereof is a true and correct copy of the notice of the special meeting of Stockholders of Arctic Circle held on June 25, 1982, and was sent to all Stockholders of record as of the applicable record date prior to the special meeting. A written copy of the 1982 Stock Option Plan, in its present form, was presented to the Stockholders of Arctic Circle at the special meeting in conjunction with their approval of the 1982 Stock Option Plan.

Third Amended Complaint, Exh. C, at 10–11. Furthermore, the minutes of the stockholders' meeting reportedly state that nine shareholders, in addition to the five defendants, were either present at the special stockholders' meeting or were represented by proxy. Plaintiff claims, however, that none of the nine shareholders received notice of the meeting, were present at the meeting, or submitted proxies for the meeting.

■ Thus, plaintiff has specified the date, content and manner of each defendant's alleged fraudulent conduct in signing the Certificate and has incorporated by reference the notice and minutes of the stockholders' meeting. "[S]pecific allegations about the acts of a group member are not required where the defendants are 'identified as officers and/or directors, and the alleged misrepresentations and omissions were in documents like annual reports and financial statements that entail the collective actions of the officers and/or directors.'" *Wabash Valley Power v. Public Serv. Co. of Ind.*, 678 F.Supp. at 762 (citations omitted). While Mr. Lochhead cannot trace original responsibility for those documents to any one of the defendants, it is sufficient to claim that each defendant became responsible for the truthfulness of statements regarding the notice and meeting minutes through their certifying signatures.

The court earlier found that plaintiff had "broadly accuse[d]" the individual defendants plus Arctic Circle and Quaker State of wrongdoing without particular support. *Lochhead v. Alacano*, 662 F.Supp. at 233. Although the First Amended Complaint was dismissed pursuant to Rule 9(b), the court granted leave to amend. After further study, and after consideration of the entire Third Amended Complaint, the court now finds that plaintiff's allegations are sufficiently particularized as to the causes of action filed against the five individual defendants to withstand the motion to dismiss.

### B. Conspiracy

Conspiracy is not one of the listed causes of action which must meet the requirements of Rule 9(b) but "plaintiffs must nevertheless provide some factual basis for the legal conclusion that a conspiracy existed." *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1372 (D.Conn.1987) (citations omitted). For example, behavior may imply an agreement to conspire where no formal agreement has been shown. "[I]t is settled that '[n]o formal agreement is necessary to constitute an unlawful conspiracy' and that 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement.'" *Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc.*, 394 U.S. 700, 704, 89 S.Ct. 1391, 1393, 22 L.Ed.2d 658 (1969) (per curiam) (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 (1946) and *Theatre Enter's. v. Paramount Film Distrib. Co.*, 346 U.S. 537, 540, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954)).

Mr. Lochhead has alleged that

upon information and belief, Morgan, acting in concert and conspiracy with the other defendants, prepared and signed, and maintained in the minute book of Arctic [Circle] through the closing date of the merger, a notice and minutes of a shareholders' meeting of Arctic [Circle]....

....

... Alacano, Morgan, Reynolds, Gee and Edwards, acting in concert and conspiracy with each other, each falsely represented and certified in writing in a Directors' and Officers' Certificate ... as part of the merger....

Defendants, as ... conspirators ... have engaged in a pattern of racketeering activity....

Third Amended Complaint at 8, 10, 19. The court observes that plaintiff has not alleged conspiracy as a separate cause of action in his Third Amended Complaint, nor has plaintiff clearly distinguished any differences between the elements of conspiracy to commit common law fraud, securities fraud, or the requirements to show a RICO conspiracy. The pleading of conspiracy, the court assumes, is to prepare a foundation looking toward trial and the receipt of the hearsay statements of co-conspirators to tie all defendants into the schemes as plead.

Plaintiff argues that since every conspirator is liable for the acts of his co-conspirators, it is immaterial to identify which defendant had the duty to send notice of the meeting or actually falsified the notice and meeting minutes. Essentially, plaintiff reasons that it is only important that these misrepresentations then became part of the mailed prospectus and registration statements which collectively demonstrate the alleged conspiracy.[7] Defendants contend these arguments are overly conclusory and sufficient facts have not been alleged to particularly assert a conspiracy among the defendants.

Plaintiff points out that all the defendants signed the Certificate certifying as to the factual details leading to the purported proper adoption of the 1982 Stock Option Plan on November 14, 1985, the same date that Arctic Circle's counsel, relying on the Certificate, issued his legal opinion, and the stockholders voted to ap-

---

**7.** Plaintiff also mentions "aiding and abetting" in his complaint, but only in the context of describing a conspiracy. Therefore, it does not appear that the complaint recites aiding and abetting as a cause of action that would warrant separate consideration by the court.

prove the merger. Plaintiff cannot be "penalize[d] ... merely because he was not privy to, and, therefore, cannot plead the details of, the inner workings of a group of defendants who allegedly acted in concert to defraud him." *Kravetz v. Brukenfeld*, 591 F.Supp. 1383, 1388, n. 9 (S.D.N.Y.1984) (securities fraud claim met Rule 9(b) requirements); *cf. Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985) (without supporting facts regarding surrounding circumstances, claim of common law fraud is merely conclusory accusation). Furthermore, since agreement to accomplish a fraudulent objective can be inferred, it is irrelevant whether all of the five defendants participated in every alleged act. *See United States v. Elliott*, 571 F.2d at 902 (RICO conspiracy properly pleaded even if "each defendant participated ... through different, even unrelated crimes ...)." A complaint which alleges the manner in which a conspiracy to defraud is to be carried out and the role of the defendants in the conspiracy is sufficient to withstand a motion to dismiss. *Kravetz v. Brukenfeld*, 591 F.Supp. at 1388. Thus, allegations in the Third Amended Complaint set forth a conspiracy to defraud and give defendants notice of the grounds upon which those claims rest.

### C. Mental State

 A particular mental state is an essential element of each of plaintiff's causes of action. For example, in common law fraud claims, knowledge of false representation needs to be established. *Dugan v. Jones*, 615 P.2d at 1246. Similarly, under federal securities laws, Section "10(b) is a 'catch-all' antifraud provision, but it requires ... [plaintiff] prove defendant acted with scienter ...." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). A frame of mind which shows intent or recklessness in making material misrepresentations or omissions in connection with the securities transaction must be shown, and mere negligent conduct will not give rise to a Section 10(b) cause of action. *Wertheim & Co. v. Codding Embryological Sciences, Inc.*, 620 F.2d 764, 766 (10th Cir.1980) (citing

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976)). RICO causes of action do not have a separate *mens rea* requirement but rely on that found in the predicate offense. *United States v. Biasucci*, 786 F.2d 504, 512 (2nd Cir.) *cert. denied*, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986). Similarly, in conspiracy cases, while knowledge of the conspiracy and intent to join or further the objectives of the conspiracy are necessary as separate elements, the quantum of *mens rea* required is the same as that required for the underlying substantive offense. *See United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (criminal conspiracy conviction requirements), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979) (quoting *Ingram v. United States*, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1975)); *United States v. Elliott*, 571 F.2d at 902–03 (general federal conspiracy law analogized to RICO conspiracy provisions). However, plaintiff and defendants disagree on whether plaintiff must plead scienter with particularity and whether intent can be adequately inferred from the facts alleged in the Third Amended Complaint. *See e.g. Dahl v. Gardner*, 583 F.Supp. at 1267 (securities action based upon common law fraud claim was sufficiently detailed to give notice without alleging scienter); *compare Cook v. Zions First Nat'l Bank*, 645 F.Supp. at 425 (among other deficiencies, fraud and deceit claims did not allege any specific defendant had specific intent).

The Tenth Circuit has stated that " 'Rule 9(b) does not ... require the pleading [with] ... any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake.' " *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986) (quoting *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774–75 (D.Colo.1964)). "The clear weight of authority is that Rule 9" does not require specificity in pleading "circumstances or evidence from which fraudulent intent

could be inferred". *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). Thus, Mr. Lochhead need only plead factual circumstances implying fraudulent intent.

 Upon review of the applicable law, the court finds the factual allegations in the Third Amended Complaint sufficiently allege the acts of each defendant and the claimed conspiracy of defendants collectively. Also, defendants' scienter can be inferred from these facts. While some allegations of fraud are circumstantial by the nature of this case, the claims in the Third Amended Complaint are sufficiently particularized to satisfy the notice requirement of Rule 9(b) and for the causes plead to withstand a motion to dismiss.

## IV. LEGAL SUFFICIENCY

Defendants claim that the facts alleged in the Third Amended Complaint fail to establish a causal relationship between the claimed fraudulent acts and Mr. Lochhead's injury and, furthermore, under prevailing RICO law, do not constitute the required pattern of racketeering activity. Defendants argue that, absent these essential elements, plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted. To resolve these two issues, the court will examine the factual sequence of events attributed to the fraudulent schemes.

### A. Causal Relationship

Mr. Lochhead claims that the fraud began sometime in 1982 or 1983 when defendants purported to adopt the 1982 Stock Option Plan. *See* Reporter's Transcript, April 22, 1988, at 56, 57, 59. Although plaintiff does not claim defendants had any knowledge of a merger at that time, he contends that the sham board of directors' meeting and false notice and meeting minutes created the opportunity for improperly obtaining additional stock and the advantage of certain tax benefits. It was not until 1985, following announcement of the merger, that the 1982 Stock Option Plan was exercised and plaintiff's ownership interest was diluted. According to plaintiff's theory of the case, the alleged fraud was perpetuated during preparation of the merger documents and Mr. Lochhead's injury happened through the exchange of Arctic Circle stock for Quaker State stock.

Defendants contend that there is no causal connection between the alleged acts giving rise to plaintiff's claims and the injury he allegedly suffered. Defendants also reason that the issuance of stock under the 1982 Stock Option Plan is unrelated to the merger and, therefore, Mr. Lochhead suffered no injury as a result of the merger.

 First, defendants argue that plaintiff cannot successfully claim he relied upon any misrepresentations or omissions and that, therefore, the causal connection for his state claim of common law fraud is missing. Reliance and causation can be very closely related. "[U]se of the concept of reliance as a means of finding a connection introduces the factor of causation." *Hickman v. Groesbeck*, 389 F.Supp. 769, 778 (D.Utah 1974). Plaintiff claims that if he had not relied on the misrepresentations and omissions in corporate records and merger documents, he could have taken steps to protect his legal rights. Injunctive relief could have been sought. *Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641, 646 (3rd Cir.1980) (deprivation of state injunctive remedy as basis for federal claims); *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1292 (9th Cir.1979) ("inadequate disclosures [may] lull into security those shareholders who might" otherwise seek state injunctive relief); *see also Floor v. Johnson*, 114 Utah 313, 199 P.2d 567 (1948). Plaintiff could have exercised his rights to persuade others to his view, to vote against the merger transaction, or to seek an appraisal. *See Lockspeiser v. Western Maryland Co.*, 768 F.2d 558, 561 (4th Cir.1985); *Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 613–14 (5th Cir.1979) (availability of state remedies a factor in 10b–5 liability), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980). Thus, plaintiff may have been able to interrupt the causal cycle if any irregularities had been disclosed. Minority shareholders

have a right to a judicial determination of the fairness of transactions carried out by controlling shareholders. If fairness cannot be demonstrated, the minority shareholder is presumed to have relied on nondisclosure. *Wright v. Heizer Corp.*, 560 F.2d 236, 250 (7th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). *Cf. Hickman v. Groesbeck*, 389 F.Supp. at 779 (misrepresentation did not cause alleged damages).

■ Second, defendants contend that plaintiff's ownership interest was diluted prior to the merger activities. If the injury occurred solely at the time the stock options were exercised, a causal connection between that injury and any federal securities law violations that later occurred cannot be found. Under this view, purported misrepresentations in connection with the merger were not directly responsible for Mr. Lochhead's loss, *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. Unit A Mar. 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), and only a "but for" causation exists. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61–62 (2nd Cir. 1985) ("but for" causation not enough). While it is claimed the 1982 Stock Option Plan lay dormant for several years, the 1985 events apparently followed closely one upon the other. According to the facts as now presented, defendants began exercising their stock options about one week after the July merger announcement and the full amount of stock available under the 1982 Stock Option Plan was purchased within approximately the next two months. On a single day, November 14, 1985, the five defendants signed the Certificate, Arctic Circle's counsel issued his legal opinion, and the shareholders voted to accept the merger proposal. Plaintiff asserts his injury was not finally confirmed until the swift-moving merger events had come to a conclusion and the dilution of plaintiff's ownership interest in Quaker State had been consummated. Assuming the truth of these facts, it would seem the merger activities could not be fractionated from the full flow of events that transpired.

Furthermore, while the causal chain must be unbroken, *In Re Catanella and E.F. Hutton Co., Securities Litigation*, 583 F.Supp. 1388, 1415–16 (E.D.Pa.1984), a lack of reliance on one component of the scheme is not necessarily determinative. *Shores v. Sklar*, 647 F.2d 462, 469 (5th Cir. May 1981), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Thus, it seems to the court these pre-merger events can be pleaded as part of a chain of circumstances supporting a claim of fraud.

For purposes of pleading a RICO cause of action, the legislative history indicates that

> two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity ...." S.Rep.No. 91–617, p. 158 (1969).... Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e).

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Thus, *Sedima* makes it "clear that a RICO violation requires ... related racketeering acts." *Torwest DBC, Inc., v. Dick*, 810 F.2d 925, 928 (10th Cir.1987). Although the acts must be interrelated, only the approximate times that the acts allegedly occurred need be stated. *See Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1355–56 (E.D. Pa.1983) ("amended complaint ... set out the approximate time period when the limited partnerships were created and that the

misrepresentations were made ..." as part of a scheme to defraud). Plaintiff is not claiming that the merger was contemplated at the time the 1982 Stock Option Plan was purportedly passed. However, as the court understands the Third Amended Complaint, plaintiff has alleged that defendants intended to wrongfully exercise the option and thus increase their proportionate ownership in Arctic Circle at some future point in time. That time arrived with the fortuitous planned merger of Arctic Circle into Quaker State. With the accomplishment of the merger, the plaintiff's ownership interest was diluted without his knowledge and a federal as well as a state remedy could then be sought. *Cf. NL Indus., Inc. v. Gulf & Western Indus.*, 650 F.Supp. 1115, 1128 (D.Kan.1986) (racketeering activity to acquire an interest in an enterprise under Section 1962(b) not shown as cause of plaintiff's harm); *Condict v. Condict*, 826 F.2d at 927 (more than two uses of the mail or wires did not show conduct of an enterprise through a pattern of racketeering activities under 1962(c)).

The alleged facts suggest that the merger announcement triggered defendants' exercise of the stock options. The defendants each signed the Certificate certifying as to the validity of notice and minutes at which the 1982 Stock Option Plan was purportedly adopted. These facts link the 1982 incidents with those happening later in 1985. Accordingly, we find that the Third Amended Complaint adequately pleads causation among events beginning at the adoption of the 1982 Stock Option Plan and ending when Arctic Circle stock was exchanged for that of Quaker State.

**B. Pattern of Racketeering Activity**

 Plaintiff's RICO causes of action all possess a common element of proof in that each requires that a pattern of racketeering activity be shown. *Medical, Inc. v. Angicor Ltd.*, 677 F.Supp. 1000, 1003 (D.Minn.1988). Indeed, a pattern of racketeering activity is a central requirement for a RICO violation. To properly plead pattern when legitimate businesses have been infiltrated, "more than one 'racketeering activity' and the threat of continuing activity" are essential, in addition to showing that the racketeering acts are related. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep.No. 91–617 at 158 (1969)). " '[I]t is this factor of *continuity plus relationship* which continues to produce a pattern.' " *Id.* (emphasis in original). Thus, while courts are to observe their mandate to construe the RICO statutes broadly, the *Sedima* elements of pattern must still be met. However, no single bright line test has yet emerged. *Torwest DBC, Inc. v. Dick*, 810 F.2d at 929. The Tenth Circuit has declined to "construct an affirmative definition of what would constitute such a pattern" but at the same time has found it necessary to decide what a pattern is not. *Garbade v. Great Divide Mining and Milling Corp.*, 831 F.2d 212, 214 (10th Cir. 1987). The court faces that same task here.

Mr. Lochhead has alleged two separate but related schemes in his Third Amended Complaint: 1) deceiving plaintiff and the other minority shareholders during exercise of the 1982 Stock Option Plan and the merger transactions, and 2) defrauding the federal government by failing to disclose the invalidity of the 1982 Stock Option Plan to the IRS. Defendants point out that although multiple acts are alleged, the activities all relate to exercise of the 1982 Stock Option Plan and constitute but a single purported scheme to defraud.

" '[T]he mere fact that the predicate acts relate to the same overall scheme ... does not mean that the acts automatically fail to satisfy the pattern requirement. The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends upon the facts and circumstances of the particular case, with no one factor being necessarily determinative.' " *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 826 (D.Kan.1987) (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986)) (emphasis omitted). Thus, while some courts have held that different criminal episodes or schemes are not required, *Bank of America Nat'l Trust & Savings Assoc. v. Touche Ross & Co.*, 782 F.2d 966,

971 (11th Cir.1986), and others have looked to the existence of more than one scheme, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648, 650 (8th Cir.), *cert. granted,* —— U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1987), a flexible approach has been adopted by others. The Seventh Circuit has adopted a fact-specific inquiry in which no single factor controls but where those factors collectively form a "lens through which the courts may focus on the existence of [pattern]." *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988). Applying these principles, multiple acts of mail fraud in connection with only one victim and one basic transaction are not sufficient to satisfy the requirements for pattern. *Id.* Similarly, in *Walk v. Baltimore and Ohio R.R.*, 847 F.2d 1100, 1102, 1105 (4th Cir. 1988), the Fourth Circuit held that minority shareholders failed to allege a pattern of racketeering activity in relation to a proposed merger of a railroad. That court stated:

> The complaint ... alleged that the defendants had committed multiple acts of securities fraud by issuing a misleading prospectus to ten investors in connection with a single stock offering. We found this insufficient to satisfy the continuity aspect of the pattern requirement because the predicate acts alleged were all designed to perpetrate a single fraud.... [T]he multiplicity of the predicate acts ... was more a reflection of the underlying transaction—a securities deal which produced numerous pieces of paper—than of the scope and persistence of the criminal activity involved. Predicate acts must be viewed in context, we stressed; the mere fact that a particular transaction generates numerous pieces of paper —and hence the potential for a greater number of related predicate acts—does not necessarily mean that those predicate acts in combination pose a special threat to social well-being.

*Id.* at 1104 (citations omitted).

Although Mr. Lochhead is only seeking recovery on his own behalf, his complaint alleges that all minority shareholders were injured. However, all claims arise from a single set of acts aimed toward a single primary goal, that of increasing defendants' ownership interest at the expense of those minority shareholders. The alleged fraud contained within those acts was perpetuated through numerous documents, such as the written opinion by Arctic Circle's legal counsel, the merger proxy and prospectus materials, and any related income tax returns. Viewed in this context, the acts alleged in plaintiff's Third Amended Complaint collapse into a single scheme to defraud. *Cf. Grant v. Union Bank*, 629 F.Supp. 570, 578 (D.Utah 1986) ("[t]aken together, the two allegedly fraudulent transactions ... might have presented a question of fact as to 'pattern of racketeering activity,'" had the existence of both fraudulent transactions been adequately shown). Nevertheless, a final determination on this point alone is not necessary since it leads to a more serious pattern flaw.

As the Tenth Circuit has observed:

> [c]ourts generally agree that to make an adequate showing of continuity under *Sedima*, a plaintiff must demonstrate some facts from which at least a threat of ongoing illegal conduct may be inferred. A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished.

*Torwest DBC, Inc. v. Dick*, 810 F.2d at 928–29 (footnote omitted). Even though plaintiff alleges that the scheme began in 1982 or 1983 with an agreement and the adoption of the 1982 Stock Option Plan, any scheme came to a close once the 1985 merger transaction was complete. There is no indication that similar schemes had been undertaken or even contemplated, then or at any subsequent time. This court cannot see that these activities created any racketeering threat beyond the single set of circumstances presented here. "Though the activity engendered by this scheme was spread out over time, it was undertaken merely as a means to the accomplishment of that single end, and there is nothing to suggest that it would have continued for a

moment longer than was necessary to accomplish it." *Walk v. Baltimore and Ohio R.R.*, 847 F.2d at 1105. *See Garbade v. Great Divide Mining and Milling Corp.*, 831 F.2d at 214 (scheme ended when objective of acts was met and continuity element is absent).

Thus, the court finds that plaintiff's RICO causes of action fail to meet the continuity aspect of the RICO pattern requirement. Without continuity, the complaint "is but an unsuccessful effort to dress a garden-variety fraud and deceit case in RICO clothing." *Condict v. Condict*, 826 F.2d at 929. Therefore, claims based upon Sections 1962(b), 1962(c) and 1963(d) are dismissed for failure to state a cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

## V. CONCLUSION

Mr. Lochhead has been given full opportunity to plead his causes of action in successive complaints over a long period of time. The court is now prepared to enter its ruling on the Motion to Dismiss.

Plaintiff has standing to sue for claims based upon a dilution of his ownership interest as a shareholder. The alleged facts fail to demonstrate the continuity requirement necessary to allege a pattern of racketeering activity. The RICO causes of action are dismissed with prejudice. The Motion to Dismiss is otherwise denied.