**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GEORGANNE BIXLER; BUDDY
JACK KENNEMUR; CARROLL
SORELLE; DEAN COLEMAN,

       Plaintiffs-Counter-
       Defendants-Appellants,

  and

MINERAL ENERGY AND
TECHNOLOGY CORPORATION
(METCO),

       Plaintiff,

v.

J. DOUGLAS FOSTER; MICHAEL
R. COMEAU; URANIUM KING,
LTD., (UKL), an Australian
corporation; PAUL FISH; FRED
PETE GIBSON, III; JIM MALONE,

       Defendants-Appellees,

  and

MICHAEL DUNCAN; SAM SAPPER,

       Defendants-Counter-
       Claimants-Appellees.

No. 09-2138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:08-CV-00676-MCA-DJS)**

Submitted on the briefs:[*]

René Ostrochovsky, Albuquerque, New Mexico, for Plaintiffs-Appellants.

Luis G. Stelzner, Juan L. Flores, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, New Mexico, Marc D. Flink, Baker & Hostetler, LLP, Denver, Colorado, for Defendant-Appellee Uranium King Ltd.

Michael W. Brennan, Brennan & Sullivan, Santa Fe, New Mexico, for Defendant-Appellee Jim Malone.

Andrew G. Schultz, Bruce Hall, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendants-Appellees Michael Duncan and Sam Sapper.

John B. Pound, Long, Pound & Komer, P.A., Santa Fe, New Mexico, for Defendants-Appellees Paul Fish, Esquire and Fred Gibson, III, Esquire.

Jerry Wertheim, John Wentworth, Jerry V. Wertheim, Jones, Snead, Wertheim & Wentworth, P.A., Santa Fe, New Mexico, for Defendant-Appellee Michael Comeau, Esquire.

Christopher M. Moody, Repps D. Stanford, Moody & Warner, P.C., Albuquerque, New Mexico, for Defendant-Appellee J. Douglas Foster.

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

This case was brought by minority shareholders of Mineral Energy and Technology Corp. (METCO), against its directors and lawyers. The complaint alleged that the defendants violated the civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, when they arranged to transfer METCO's assets to an Australian corporation. The district court dismissed plaintiffs' complaint for failure to state a claim, and they appeal.

We conclude that (1) the plaintiffs lacked standing under RICO to assert shareholder derivative claims; (2) allegations of securities fraud do not establish predicate acts under RICO; and (3) the "continuity" requirement of RICO is not satisfied by the allegations in the complaint.

Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

According to the complaint, defendants Duncan, Sapper, and Malone were directors and majority shareholders of METCO, a New Mexico uranium mining company.[1] Together with Karl Meyers, another director who is not a party to these proceedings, they negotiated a trade of METCO's uranium mining claims to subsidiaries of defendant Uranium King, Ltd. (UKL), an Australian corporation. Defendants Duncan, Sapper, and Malone were also directors of UKL.

---

[1]     Defendant Malone was never served with process in this case.

UKL subsequently merged with another Australian corporation, Monaro Mining NL (Monaro).

Plaintiffs alleged that the transfer of mining claims provided for METCO to receive $6.5 million and for METCO to receive stock in UKL in exchange for METCO's uranium interests. The UKL stock was then to be distributed among the METCO shareholders on a pro rata basis. According to plaintiffs, after defendants Duncan, Sapper, and Malone transferred the METCO uranium claim deeds to UKL, UKL abandoned the agreement and paid neither the money nor the UKL stock to METCO. Consequently, plaintiffs lost the value of their investment in METCO. In addition, plaintiffs claimed that Duncan, Sapper, and Malone were highly compensated for arranging the transaction.

Based on this conduct, the minority shareholders contend the defendants defrauded them of their share of the UKL stock and rendered their METCO investment virtually worthless. Plaintiffs also aver that the UKL-Monaro merger was a fraudulent means of transferring the mining claims to a third entity. The remaining defendants, Foster, Comeau, Fish, and Gibson, were attorneys who allegedly represented the other defendants for the purpose of filing frivolous lawsuits against plaintiffs to keep them from pursuing claims to METCO's assets.

Plaintiffs claim defendants conspired to deprive them of the value of their METCO shares by a series of predicate acts based on the above-described conduct, in violation of RICO. The district court granted motions to dismiss filed

by defendants UKL, Comeau, and Foster, ruling that plaintiffs' complaint failed to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[2] The district court held that plaintiffs did not have standing to bring RICO claims on METCO's behalf and that the Private Securities Litigation Reform Act (PSLRA) precluded RICO claims based on securities fraud. The court then ordered plaintiffs to show cause why their claims against the remaining defendants should not be dismissed for the same reasons. After reviewing plaintiffs' response to the show-cause order, the district court dismissed the remaining claims.[3]

Plaintiffs appeal, arguing that the district court (1) applied an incorrect standard to grant dismissal; (2) failed to grant a default judgment against defendant Malone even though evidence showed that he evaded service of process and had actual knowledge of the lawsuit; and (3) was biased in defendants' favor in applying an incorrect dispositive standard and construing the facts in defendants' favor, thus violating plaintiffs' due process rights.

---

[2]    Defendant Comeau's motion was styled as a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Our standard of review for rulings under Rule 12(b)(6) and Rule 12(c) is the same–de novo. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3099, 3313, 3319 (U.S. Nov. 30, 2009) (No. 09-257).

[3]    The district court also denied plaintiffs' request for injunctive relief and declined to exercise supplemental jurisdiction over defendants Duncan and Sapper's state-law claims. No party has appealed those rulings, so we do not address them.

Although the first argument is ostensibly a challenge to the standard of review applied by the district court, it is more fairly characterized as two distinct challenges: the *first* to the determination that plaintiffs' alleged injuries were due to their status as minority shareholders of METCO; the *second* to the court's application of the PSLRA. We start with the standard of review, and consider each contention in turn.

## II. Standards of Review on Appeal

We review de novo the district court's Rule 12(b)(6) dismissal. *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]e assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

We also review de novo the legal issue of plaintiffs' standing to bring their claims. *See Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1173 (10th Cir. 2009).

### III. Dismissal for Failure to State a Claim

#### A. RICO Standing

The district court held that plaintiffs, as METCO minority shareholders, lacked standing to bring a RICO claim based on the diminution of the value of their shares. We agree.

RICO provides a cause of action for those injured in business or property by reason of prohibited racketeering activities. 18 U.S.C. § 1964(c); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by [18 U.S.C. § 1962(a)-(c)], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)."). A plaintiff has standing only if his injuries were proximately caused by the RICO violation. *Gillmor v. Thomas*, 490 F.3d 791, 797 n.4 (10th Cir. 2007); *see also Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (holding plaintiff lacked standing to bring RICO claims because there was no "direct relation between the injury asserted and the injurious conduct alleged").

In general, the law is that conduct which harms a corporation confers standing on the corporation, not its shareholders.[4]  "[T]he [shareholder standing rule] is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment."  *Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990).  An exception to this rule "allow[s] a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated."  *Id.*; *accord Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006).  Plaintiffs claim to fall within this latter exception.

Plaintiffs' allegations, however, merely assert the minority shareholders suffered a diminution in value of their corporate shares without receiving the same monetary compensation the majority shareholders received.  Such an injury is not direct and personal for RICO purposes but is, rather, an injury to the

---

[4]      "As a general matter, shareholders suffer injury in the Article III sense when the corporation incurs significant harm, reducing the return on their investment and lowering the value of their stockholdings."  *Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006).  Shareholders, however, must also meet the "prudential requirements of the standing doctrine."  *Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). One of these is that the "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

corporation.  To avoid this fundamental problem, the minority shareholders assert that their claims are based on injury to them, rather than the corporation. Specifically, they contend that (1) defendants' actions caused their proportionate corporate ownership to be diluted, and (2) that defendants have pursued abusive litigation against them in an effort to coerce them into abandoning their interests in METCO.[5]

In support of this contention, plaintiffs point to a district court case, *Lochhead v. Alacano*, 697 F. Supp. 406 (D. Utah 1988), as supporting the proposition that defendants' conduct led to the dilution of their proportionate corporate ownership.  In *Lochhead*, the court first noted the distinction between a claim of a "diminution in value of a shareholder's stock," for which an individual shareholder lacks standing to bring a direct cause of action, *id.* at 411, and "a corporate transaction which dilutes [a shareholder's] proportionate ownership," which a "shareholder has a direct right to attack," *id.* at 412 (quotation omitted).

---

[5]     Plaintiffs also assert that shareholders have standing to sue if they have suffered a breach of a special duty or if a defendant has violated an independent duty owed to the shareholders.  Aplt. Opening Br. at 28–29.  But plaintiffs have presented no reasoned argument explaining the nature of the duties defendants owed them or how any such duty was breached.  Consequently, we do not consider this argument. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived[.]"); Fed. R. App. P. 28(a)(9)(A) (providing that an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

The plaintiff alleged that by their fraudulent conduct, the defendants received proportionally more stock than plaintiff did in a merger of the corporation into another corporation, thus diluting the value of his shares. *Id.* at 409. Therefore, he had individual standing "to maintain his relative status as a stockholder and to protect his proportionate ownership interest against fraudulent dilution." *Id.* at 413.

Plaintiffs' argument here is based on their allegations that the majority shareholders received personal compensation for arranging the mining-claim transaction, while the minority shareholders, including plaintiffs, did not. This argument fails to show that plaintiffs' corporate ownership was diluted because they have made no showing that more shares were issued or that the value of the majority shareholders' shares increased more than theirs. Rather, they allege that the majority shareholders received compensation for agreeing to the transaction, not that those defendants' shares in METCO increased in value disproportionately. Therefore, plaintiffs have not shown that their proportionate corporate ownership was diluted as set forth in *Lochhead*.

Plaintiffs suggest on appeal that they could have avoided these standing problems by amending their complaint to omit their allegations of securities fraud and insider trading. We conclude that amendment would have been futile because withdrawing the specific allegations of securities fraud and insider trading would not have altered the essential nature of plaintiff's claims, which were based on

their status as minority METCO shareholders whose shares lost value.[6] *See*

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288

(10th Cir. 2008) (holding amendment to withdraw some counts of complaint would

have been futile because all substantive counts were precluded by statute).

Next, plaintiffs claim that they were injured by the frivolous lawsuits

defendants filed against them in order to force them to abandon their interests in

METCO. Because this claim is not based solely on their status as METCO

shareholders, "[t]o determine whether Plaintiff[s] properly alleged an injury to

[their] business or property, we first examine the alleged predicate acts that

purportedly caused the injury." *Deck v. Engineered Laminates*, 349 F.3d 1253,

1257 (10th Cir. 2003). Plaintiffs assert that defendants' litigation tactics were

extortionate, with the purpose of coercing them to accept defendants' allegedly

fraudulent acts. We have refused to "recogniz[e] abusive litigation as a form of

extortion [because doing so] would subject almost any unsuccessful lawsuit to a

---

[6]     A review of plaintiffs' complaint reveals that their cause of action was based entirely on an allegation of the diminution of the value of their METCO shares. *See* Aplt. App. Vol. I, Doc. 2 at 2 ("Events complained of herein . . . injured METCO minority shareholders . . . ."); *id.* at 6 ("Plaintiffs, METCO's minority shareholders[,] received nothing from the Deal."); *id.* at 7 ("All Defendants are currently joining efforts to defraud the METCO minority shareholders of the value of their shares and gut METCO."); *id.* at 11 ("By reason and as a proximate result of Defendants' racketeering activities [plaintiff] Coleman and all similarly situated shareholders have lost the value of their shares . . . ."); *id.* (listing as predicate acts, "Securities fraud and insider trading" and "Defrauding existing and potential stockholders").

-11-

colorable extortion (and often a RICO) claim." *Id.* at 1258. Therefore, plaintiffs'

abusive-litigation claim does not state a RICO predicate act. *See id.*

Because plaintiffs' injuries were based on the diminution of the value of

their METCO shares, and not on direct injury to them, we conclude their claims

are derivative of the corporation's. This conclusion accords with the uniform

holdings of other circuits that have considered this question. According to these

decisions, corporate shareholders do not have standing to sue under the civil RICO

statute for alleged injuries to the corporation. *See Craig Outdoor Advertising, Inc.*

*v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1024-25 (8th Cir. 2008) (holding

shareholder lacked standing to pursue RICO claim for alleged injuries to

corporation), *cert. denied*, 129 S. Ct. 1000 (2009); *Bivens Gardens Office Bldg.,*

*Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998) (same);

*Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) (same); *Whalen v. Carter*,

954 F.2d 1087, 1091-92 (5th Cir. 1992) (holding shareholders lacked standing to

assert a direct RICO claim because their alleged injuries derived from injuries to

the corporation, and Louisiana law provided that sole cause of action accrued to

the corporation); *In re Sunrise Secs. Lit.*, 916 F.2d 874, 880-81 (3d Cir. 1990)

(holding shareholders lacked standing to bring RICO claims belonging to

corporation; applying Florida law to determine that action was derivative); *Flynn*

*v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) (holding shareholder lacked standing

to pursue RICO claim for alleged injuries to corporation); *Sparling v. Hoffman*

-12-

*Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988) (same); *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 937 (4th Cir. 1987) (same), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 30 (1st Cir. 1987) (same); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (same).

We agree with these circuits. Therefore, the district court correctly held that plaintiffs do not have RICO standing.

## B. PSLRA Standing

The PSLRA amended RICO to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." Pub. L. No. 104-67, § 107, 109 Stat. 737, 758 (Dec. 22, 1995), amending 18 U.S.C. § 1964(c).[7] The Ninth Circuit has applied the PSLRA amendment to bar a RICO claim alleging fraud in connection with the sale of securities. *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007). There, the court rejected the plaintiff's argument that the allegedly fraudulent securities transactions in question were "intended to be a swap agreement," rather than a sale of securities, because the transactions relied

---

[7]     The Conference Committee Report accompanying the PSLRA states that the amendment was intended not only "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "pleading other specified offenses . . . as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Rep. No. 104-396, at 47 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 746.

on the sale of stock to effect their purpose. *Id.* Similarly, the Third Circuit has held that the PSLRA amendment precluded a RICO claim based on a Ponzi scheme that was accomplished by the purchase and sale of securities. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3rd Cir. 1999).[8]

In particular, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, are directed at fraud "in connection with the purchase or sale" of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975). With these provisions in mind, we consider whether the amendment to the PSLRA barred plaintiffs' civil RICO action.

Plaintiffs contend that the PSLRA exception to RICO does not apply because their claims did not involve the purchase or sale of securities. Although the minority shareholders did not purchase or sell their METCO shares as part of

---

[8]     Section 1964(c) provides in its entirety:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

the alleged wrongdoing, their allegations that defendants defrauded them from receiving UKL stock as provided in the transaction, and the subsequent (allegedly fraudulent) merger of UKL and Monaro, describe a "purchase" and "sale" of securities. *S.E.C. v. Nat'l Sec., Inc.*, 393 U.S. 453, 467 (1969) ("[S]hareholders 'purchased' shares in [a] new company by exchanging them for their old stock."); *accord Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999) ("When an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a 'purchase or sale' for purposes of bringing a Rule 10b-5 action."). Similarly, plaintiffs' claim that defendants transferred METCO's uranium interests to UKL with the intent not to honor the corresponding agreement to issue UKL stock to METCO or its shareholders, also describes a violation of Rule 10b-5. *See Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 596-97 (2001) (holding the defendant's sale of a security in the form of an option to purchase shares "while secretly intending from the very beginning not to honor the option" falls within § 10(b)'s policy of full disclosure).

Plaintiffs also attempt to avoid the PSLRA bar by arguing that most of their alleged predicate acts do not describe securities fraud. They maintain that their allegations that defendants committed mail and wire fraud, bank fraud, extortion, obstruction of justice, and interstate travel in support of racketeering, described

conduct not covered by the PSLRA.[9]  "Such conduct may well constitute [illegal and fraudulent acts], but it was also undertaken in connection with the purchase of a security.  Thus, it cannot support a civil RICO claim after enactment of the PSLRA."  *Bald Eagle Area Sch. Dist.*, 189 F.3d at 330.  Allowing plaintiffs to engage in "surgical presentation of the cause of action" would undermine the purpose of the RICO amendment.  *Id.*; *accord Gatz v. Ponsoldt,* 297 F. Supp. 2d 719, 731 (D. Del. 2003) ("A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading.").

Therefore, we conclude that plaintiffs' claims fall within the PSLRA and thus cannot form the basis of a civil RICO claim.

### C.  RICO's "Continuity" Requirement

Finally, an additional ground supports dismissal of the complaint.  It does not state a claim of "continuity" of the alleged RICO scheme.  Although the district court did not rely on this ground, "we may affirm on any grounds supported by the record."  *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).  Defendants raised this ground in the district court, thus providing plaintiffs an opportunity to address it.

---

[9]     Plaintiffs also assert that some defendants violated the Sarbanes Oxley Act, *see* 15 U.S.C. §§ 7201-7266, but they do not explain how this allegation removes their case from the PSLRA's reach.

A RICO claim "must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gillmor*, 490 F.3d at 797 (quotation omitted). A "pattern" requires at least two predicate acts. 18 U.S.C. § 1961(5). In addition, '[t]o satisfy RICO's pattern requirement, [a plaintiff must] allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009) (quotation omitted).

A viable RICO claim requires a showing of "*continuity plus relationship*." *Sedima*, 473 U.S. at 496 n.14 (quotation omitted). "The relationship test is not a cumbersome one for a RICO plaintiff. A showing that predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events is essentially all that is needed." *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992) (quotations omitted).

The showing required for "continuity," on the other hand, "is more difficult to meet." *Id.* "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989). The Supreme Court has determined

-17-

"that when Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity." *Id.* at 243 n.4.

Plaintiffs' complaint alleges that defendants engaged in a single scheme to accomplish the discrete goal of transferring METCO's uranium mining interests to another corporation (UKL, which then allegedly transferred them to Monaro). "[T]he facts as alleged fail to show any threat of 'future criminal conduct.'" *Boone*, 972 F.2d at 1556 (affirming dismissal of RICO action for failure to satisfy continuity test). Therefore, the complaint was subject to dismissal for failing to "allege[] the type of activity that RICO was enacted to address." *Id.*

*IV. Default Judgment Against Defendant Malone*

Plaintiffs also argue that the district court should have entered a default judgment against defendant Jim Malone because he evaded service and had actual knowledge of the lawsuit. The district court ruled that the court did not have jurisdiction over him because he was not served. In addition, the court declined to consider entering a default judgment against him because plaintiffs' claims were subject to dismissal on the merits. We review for an abuse of discretion the district court's denial of a motion for default judgment. *Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).

Personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered. *See Hukill v. Okla. Native Am. Domestic*

-18-

*Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008). Plaintiffs concede that Mr. Malone was not served with the summons and complaint as provided by Fed. R. Civ. P. 4(e) or (f), but they assert that he avoided service and had actual knowledge of the lawsuit. The district court stated that plaintiffs did not demonstrate that they had properly served Mr. Malone. We need not remand for factual findings as to whether Mr. Malone evaded service, *see, e.g., Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998), because we conclude that the district court's ruling was not in error.

Even if an entry of default had been appropriate, it would not have been sufficient to entitle plaintiffs to a judgment against Mr. Malone. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). Once default is entered, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206-08 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. As our discussion above demonstrates, plaintiffs' claims were barred or were

-19-

subject to dismissal under Rule 12(b)(6). Consequently, the district court did not abuse its discretion in refusing to enter a default judgment against defendant Malone.

## *V. Judicial Bias*

Finally, we address plaintiffs' contention that the district judge was biased against them. "To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias." *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005). The basis for this charge is the entry of orders dismissing the case. Adverse rulings alone do not demonstrate judicial bias. *Id.*; *see also Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 744 (10th Cir. 2005) (denying request to assign different district judge on remand based on adverse rulings).

Plaintiffs also allege judicial bias in the district court's decision to dismiss the case at the pleading stage, in part, so as not to "force defendants to go through the burden and expense of conducting discovery before they are afforded their first real opportunity to seek the dismissal of groundless claims." Aplt. App. Vol. II, Doc. 26 at 842; *see also id.* Doc. 31 at 897. *Twombly* recognized that discovery can be expensive, and that "the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage." 550 U.S. at 558-59 (quotation omitted) (addressing discovery in antitrust action); *accord Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1953 ("[T]he question presented by a motion to

dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process."). The district court's consideration of discovery expenses and abuses does not support a claim of judicial bias. To the extent plaintiffs argue that bias was shown by the district court's failure to invite them to file an amended complaint, we have held above that amendment would have been futile. Accordingly, we find no merit to this claim.

## *VI. Conclusion*

For the reasons stated above, the district court's judgment of dismissal is AFFIRMED.