**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**April 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

SAN JUAN REGIONAL MEDICAL
CENTER,

    Plaintiff Counter Defendant -
Appellee,

v.

THE LAW OFFICES OF JAMES P.
LYLE, P.C.,

    Defendant Counter Plaintiff Third
Party Plaintiff - Appellant,


THE MIDLAND GROUP; JACKSON,
LOMAN, STANFORD AND DOWNEY,
P.C.,

    Defendants Third-Party Defendants -
Appellees,

and

21ST CENTURY CENTENNIAL
INSURANCE COMPANY; JUDY LYNN
PARKER,

    Defendants.

No. 21-2035
(D.C. No. 1:19-CV-00734-MV-JFR)
(D. N.M.)

_____

## ORDER AND JUDGMENT[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding

_____

Before **BACHARACH**, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

This is an appeal by the Law Offices of James P. Lyle, P.C. (Lyle Law Firm) and James P. Lyle from the district court's award of attorneys' fees to the San Juan Regional Medical Center (Hospital), the Midland Group (Midland), and Jackson, Loman, Stanford, & Downey, P.C. (Jackson Law Firm) as a sanction under Fed. R. Civ. P. 11.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  State Court Suit

In 2018, Judy Lynn Parker was injured in a car accident in New Mexico and taken to the Hospital for treatment.  Midland, the Hospital's billing agent, filed a notice of hospital lien with the county clerk in the amount of $15,171.26 for Parker's treatment.  *See* N.M. Stat. Ann. § 48-8-1(A).  The Hospital also mailed copies of the notice to 21st Century Centennial Insurance Company (21st Century), the responsible party's insurer, and Parker's attorney, the Lyle Law Firm.

The Lyle Law Firm attempted to settle the hospital lien under the theory that Parker's claim would eventually exceed the $50,000 limit of the responsible driver's liability coverage and the lien should be reduced to $2,124.03 based on the common fund doctrine and principles of equitable subrogation.  Midland disputed application of the

---

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

doctrine of equitable subrogation because the Hospital did not have a subrogation interest in Parker's recovery from 21st Century; however, it agreed that Parker was entitled to a reduction under the common fund doctrine and offered to reduce the lien to $10,620.13.

The Lyle Law Firm refused the offer; instead, it proceeded to negotiate a settlement with 21st Century for $50,000. When it received the $50,000 check, the firm took out what it was owed for attorneys' fees and other costs and disbursed the remaining funds to Parker.

The Jackson Law Firm stepped in because the one-year deadline for filing suit on the hospital lien was fast approaching. *See id.* § 48-8-3(B). When the parties failed to reach an agreement, it filed suit in state court on behalf of the Hospital and against Parker on the theory that she held the disbursed funds in a constructive trust for the benefit of the Hospital, and against 21st Century and the Lyle Law Firm as parties who had notice of the lien but nonetheless disbursed the funds before the lien had been satisfied. *See id.* § 48-8-3(A). Attached to the complaint was a "Court-Annexed Arbitration Certificate," which notified the court that the amount in controversy was less than $25,000. Aplees. Suppl. App. at 15. Under the local rules, such cases are typically referred to a local arbitrator, which gives the parties an opportunity to resolve the dispute quickly and at less expense.

## B. RICO Complaint

But rather than resolving the dispute in state court, Lyle, as the attorney for the Lyle Law Firm, removed the case to federal court asserting a class-action claim on behalf of the firm and against the Hospital, Midland, and the Jackson Law Firm (Appellees)

3

under the Racketeer Influenced and Corrupt Organizations Act (RICO). According to the complaint, Appellees, described collectively as the "'Enterprise,'" were "engaged in a widespread pattern of illegal activity," which "consists of systemic extortion of excessive reimbursements from payments made on behalf of third-party wrongdoers, typically by way of insurance liability payment to injured parties, their[] agents and representatives." Aplt. App. at 16. "Specifically, the Enterprise routinely [makes] demands for lien payments which exceed the amounts that can be validly claimed under New Mexico law because, on information and belief, the Enterprise does not honor New Mexico's Doctrine of Equitable Subrogation." *Id.* "The Enterprise does this to compel the persons [it] threaten[s] to pay excess amounts as 'lien reimbursements' or face meritless litigation," which "constitutes extortion as a matter of law." *Id.* at 18.

The complaint further alleged that the Lyle Law Firm had "suffered financial loss as a result" of the Hospital's refusal to accept a proposed reduction of Parker's debt, *id.*, when in fact it had already been paid its attorneys' fees. Lyle then used this sham injury as the basis to expand the claim into a class action brought by the firm "on behalf of itself and the putative class which consists of similarly situated persons . . . who were coerced by the Enterprise into making lien reimbursement payments . . . which did not include appropriate reductions required under the New Mexico Equitable Subrogation Doctrine." *Id.* at 19 (internal quotation marks omitted).

## C. Motion For Sanctions

On August 30, 2019, Appellees sent Lyle a Rule 11 safe-harbor letter and motion for sanctions. *See* Fed. R. Civ. P. 11(c)(2). The letter stated that the motion would be

4

filed "twenty-one days after the transmission of this letter" unless the RICO claim was withdrawn. Aplt. App. at 51.

Four days later, on September 3, Appellees filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which alleged that the complaint failed to state a cognizable RICO claim because there was no predicate act or any injury. Further, Appellees informed the district court that they intended to file their motion for Rule 11 sanctions if the RICO complaint was not withdrawn and attached a copy of the August 30 safe-harbor letter sent to Lyle.

When the RICO claim was not withdrawn, Appellees filed their Rule 11 motion for sanctions on September 24—twenty-five days after Appellees sent the safe-harbor letter. Although the Lyle Law Firm disagreed that sanctions were warranted, the district court later found that it did "not dispute[] that [Appellees] complied with the safe harbor provision of Rule 11(c)(2) by serving their Motion for Sanctions . . . before filing it." Aplt. App. at 184 n.2.

## D. District Court's Order

### 1. <u>Failure to State a Claim</u>

The district court laid the groundwork for sanctions in its order dismissing the RICO claim. It noted that the elements of a RICO claim include, among other things, a pattern of racketeering, which in turn requires the "commission of at least two predicate acts.'" *Id.* at 179 (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)). Although extortion is included as a predicate act under RICO, *see* 18 U.S.C. § 1961(1), the court found that the threat of even meritless litigation is not extortion.

5

*See* Aplt. App. at 180 ("In *Deck*, the Tenth Circuit joined a multitude of other courts in specifically holding that meritless litigation is not extortion under [RICO]." (brackets and internal quotation marks omitted)).

Moreover, the district court found that the claim was "subject to dismissal for failure to alleged the requisite injury[,]" because "[a] plaintiff has standing to assert a RICO claim only if the RICO violation 'proximately caused' injury to his or her business or property." *Id.* at 181 (quoting *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010)). "Here, the factual allegations of the [RICO complaint] belie its conclusory and vague allegation that [the Lyle Law Firm] suffered financial loss as a result of the Enterprise's pattern of racketeering activity." *Id.* (internal quotation marks omitted). Instead, "[b]y its own allegations, [the firm], as Parker's attorney, would first be reimbursed for its fees, and thus would suffer no injury whatsoever[] as a result of [Appellees'] allegedly extortionate demands for payment on the [Hospital] Lien." *Id.* The court granted the motion to dismiss and remanded the case to state court.

## 2. **Rule 11 Sanctions**

The district court also granted Appellees' motion for sanctions. As grounds, the court found that "a brief review of controlling Tenth Circuit law would have revealed that the threat of allegedly abusive litigation does not constitute extortion, and thus cannot serve as a predicate act for purposes of RICO," *id.* at 185, and therefore "a reasonable and competent attorney would not have believed in the merit of [the] class action [RICO] claim," *id.* at 186. "By filing the [RICO] Complaint and the response in opposition to the Motion to Dismiss, Lyle has violated the requirements of Rule 11." *Id.* Moreover, the

6

court found that "the sanctions requested by [Appellees], namely, an award . . . of their reasonable attorney's fees, costs, and expenses in defending against the [RICO claim] are 'limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated,' and thus are appropriate." *Id.* (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)). The court directed Appellees to file a motion for attorneys' fees within ten days and Lyle to file any objection to the amount of fees within fourteen days.

**E. Motion For Attorneys' Fees**

Appellees requested $19,205.39 in attorneys' fees. In response, Lyle changed his position and argued for the first time that the August 30 safe-harbor letter was sent to the wrong email address, and he never received it. He did not dispute the reasonableness of the hourly rate but complained that the Jackson Law Firm spent too much time in preparing the motion to dismiss and otherwise argued that fees could not be recovered for anything other than the motion to dismiss. In their reply, Appellees acknowledged that the letter had the wrong email address but produced a copy of the actual transmittal email that was sent to the correct address.

Faced with evidence that the August 30 safe-harbor letter had been sent to the correct email address, Lyle advanced several additional meritless arguments. For example, he argued that his office manager reads and prints his emails, and she did not recall seeing the letter. Lyle also accused Appellees of potential fraud on the court because the transmittal letter "does not contain the native language computer coding which would typically be found in any e-mail that has an attachment," and it "should be

provided so that the Court can determine, once and for all, whether this e-mail was actually sent, along with when it was sent and where it was sent." *Id.* at 238. The magistrate judge recommended an award of $20,836.64 in attorneys' fees, which included an additional $1,631.25 for Appellees' reply.

The district court overruled Lyle's objections and adopted the recommendation. Regarding the August 30 safe-harbor letter, the court rejected the untimely argument that it was sent to the wrong address because Appellees produced the actual email transmitting the letter to the correct email address. As to the reasonableness of the fees, the court also "reject[ed] [the] efforts to limit fees to those incurred in connection with the motion to dismiss," because "the [RICO] Complaint was improper from the outset," and its order granting sanctions was "clear that the award should broadly include reasonable . . . fees, costs, and expenses in defending against the claims." *Id.* at 268 (internal quotation marks omitted). This appeal followed.

## II.  LEGAL FRAMEWORK

Rule 11 states:

> By presenting to the court a pleading, written motion, or other paper—
> whether by signing, filing, submitting, or later advocating it—an attorney
> . . . certifies that to the best of [the attorney's] knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances:  (1) it is
> not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation; (2) the
> claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing
> existing law or for establishing new law; [and] (3) the factual contentions
> have evidentiary support or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity for further investigation
> or discovery . . . .

Fed. R. Civ. P. 11(b).

"Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Collins v. Daniels,* 916 F.3d 1302, 1320 (10th Cir. 2019) (ellipsis and internal quotation marks omitted). "We evaluate an attorney's conduct under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Id.* (brackets and internal quotation marks omitted). *See also White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) ("A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.").

> When . . . a pleading contains allegations that are not warranted by existing law, we examine whether they are warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Again, we employ an objective standard intended to eliminate the empty-headed pure-heart justification for patently frivolous arguments.

*Collins*, 916 F.3d at 1320 (citation and internal quotation marks omitted).

"[T]he award of Rule 11 sanctions involves two steps. The district court first must find that a pleading violates Rule 11. The second step is for the district court to impose an appropriate sanction." *Id*. at 1319 (citation and internal quotation marks omitted). At step two, "[t[he court must consider the purposes to be served by the imposition of sanctions and so limit its sanctions 'to what suffices to deter repetition of the conduct or comparable conduct by others similarly situation.'" *King v. Fleming,* 899 F.3d 1140, 1148 (10th Cir. 2018) (quoting Fed. R. Civ. P. 11(c)(4)).

### III.  STANDARD OF REVIEW

"On appeal we apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination.  A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Predator Int'l,* 793 F.3d at 1182-83 (internal quotation marks omitted).

### IV.  ANALYSIS

First, Lyle argues that the district court should have enforced a subpoena for Appellees "to produce the original e-mail which supposedly attached the misaddressed August 30, 2019 [safe-harbor] letter, including all meta-data or 'native language' which would prove exactly when it was sent and to whom," and then conduct a hearing to determine the validity of the transmittal letter.  Aplt. Opening Br. at 14.  Recall that in response to the belated argument that the letter had been sent to the wrong email address, Appellees produced the actual transmittal email.  The court's determination that no further investigation was warranted was not an abuse of discretion.

Next, Lyle cites *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) for the proposition that only "[e]xtraordinary [c]ircumstances" can justify an award of sanctions. *Id.* at 15 (internal quotation marks omitted).  But *Martin* relates to an award of attorneys' fees for wrongful removal of a case to federal court, which was not the basis for sanctions in this case.  *See Martin*, 546 U.S. at 141 ("Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked

10

an objectively reasonable basis for seeking removal.").[1]  The *Martin* test has no application here.

Further, Lyle has not made any argument that the RICO claim was warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.  Indeed, Lyle never discusses *Deck*; instead, he raises two irrelevant arguments:  (1) that "[t]he decision to award attorneys fees is inexorably intertwined with the court's evaluation of whether allegations were pleaded with sufficient particularly to survive [the] 12(b)(6) motion to dismiss" and (2) whether there was "a good faith basis for removal under the facts alleged in the counterclaims and third-party claims."  Aplt. Opening Br. at 22.  But the court did not dismiss the complaint or impose sanctions because the RICO claim was not pled with sufficient particularity, nor did it impose sanctions for wrongful removal.

There is likewise no merit to the argument that "the district court's refusal to allow [the firm] permission to amend definitely influenced the court's decision to award fees under Rule 11."  *Id.* at 23.  This argument fails because Lyle never moved to amend the complaint.  Equally without merit is the further argument that Appellees' refusal to recognize the doctrine of equitable subrogation is "extortion, pure and simple."  *Id.* at 25.

---

[1] Lyle also appears to also argue that the district court erred in dismissing the RICO claim under Rule 12(b)(6).  But any appeal from that order is untimely because the notice of appeal was filed more than thirty days after the order was entered. *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case . . . the notice of appeal . . . must be filed . . . within 30 days after entry of the judgment or order appealed from.").  Moreover, the Rule 12(b)(6) order was not designated as part of the appeal.  *See* Fed. R. App. P. 3(c)(1)(B) ("The notice of appeal must . . . designate the judgment— or the appealable order—from which the appeal is taken.").

Unsurprisingly, there is no authority cited to support the argument that the refusal to agree with an opposing party's legal position is extortion under RICO.

## V.  APPELLATE ATTORNEYS' FEES

Appellees request that we designate the appeal as frivolous under Fed. R. App. P. 38, which authorizes this court, upon a separately filed motion, to award damages and costs against an appellant who brings a frivolous appeal.  "An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc) (internal quotation marks omitted).  Other indicia of a frivolous appeal include rambling briefs, citation to irrelevant authority, and continued attempts to relitigate matters already concluded.  *See id.* at 1513.  After a careful review of the briefs on appeal, we find they have the indicia of a frivolous appeal.

But because Appellees have not sought sanctions in a separately filed motion, we order them to file a motion describing the sanctions sought and the underlying reasons within fifteen days of the filing date of this Order and Judgment.  Lyle and the Lyle Law Firm shall have fifteen days from the filing of Appellees' motion to show cause why they should not be sanctioned.  The parties' submissions will guide our determination regarding whether sanctions should be imposed.  The parties shall limit their submissions to ten pages.

## VI.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court
Per Curiam