FILED
United States Court of Appeals
Tenth Circuit

January 17, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

JOAN C. LIPIN,

     Plaintiff - Appellant,

v.

ARTHUR DODSON WISEHART; ERIN
JAMESON; ELLEN E. WISEHART;
RICHARD [RHJAKOB] KREYCIK,

     Defendants - Appellees.

Nos. 18-1060 & 18-1176
(D.C. No. 1:16-CV-00661-RBJ-STV)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

These consolidated appeals arise from a dispute over the ownership of real

property in Delta County, Colorado (Property).  Appellant Joan C. Lipin claims to

own the Property and brought this diversity action against two of her step-children

and their spouses seeking to eject them from their homes and businesses on the

Property.  On cross-motions for summary judgment, the district court held the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

undisputed facts establish that Lipin does not own the Property, which is instead owned by a trust established by the step-children's grandmother. After the district court entered summary judgment against Lipin, she appealed the final judgment and several post-judgment matters. In response, the defendant-appellees have requested that we find Lipin's appeals frivolous and impose sanctions. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm and find Lipin's appeals are frivolous.

## BACKGROUND

The following facts are undisputed unless otherwise stated:

### A. The Trust

Dorothy Wisehart established the Dorothy R. Wisehart Trust (Trust) in Indiana in May 1987, naming herself and her son, Arthur McKee Wisehart (AMW), as co-trustees. She intended for the Trust assets to qualify for the $1 million "Generation Skipping Transfer Exclusion" for federal estate tax purposes and therefore directed in the Trust Agreement that $1 million should remain in the Trust upon her death, R. Vol. 3 at 87, and that AMW's children and his wife, Elizabeth, would become beneficiaries of income from these assets. The Trust Agreement further provided AMW with general authority to appoint, that is disburse, any Trust assets that exceeded $1 million at the time of her death. Dorothy expressly provided in the Trust Agreement that issues relating to it and dispositions from the Trust were to be determined by Indiana law.

Dorothy died in 1993, at which point the Trust became irrevocable and AMW became the sole Trustee. The value of the Trust assets at this time was less than

2

$1 million. Pursuant to the terms of the Trust Agreement, Elizabeth and AMW's four children, Arthur Dodson Wisehart (ADW), Ellen E. Wisehart, C. Winston Wisehart, and William M. Wisehart, became the Trust's income beneficiaries. ADW, Ellen Wisehart and their spouses are the defendant-appellees in this action.

## B. The Property

The Property consists of four parcels in or near Paonia, Colorado. In 1992, Morning Sun Farm Trust (Morning Sun), which consisted of Ellen Wisehart and her husband, Richard [Rhjakob] Kreycik (Jacob), bought the Property from Burt and Dorothea Tucker. As part of this transaction, Morning Sun executed a promissory note to the Tuckers (Tucker Note) and a deed of trust (Tucker DOT) that secured its payment. The Property became part of the Trust in 1995 when Morning Sun conveyed it to the Trust by quit claim deed.

The following year, Morning Sun, the Tuckers, and AMW (both individually and as trustee for the Trust), entered into an amendment to the Tucker Note and Tucker DOT (Tucker Amendment). The Tucker Amendment released Morning Sun and the Trust as obligors under the Tucker Note and provided that AMW individually was responsible for paying the Note. Under the Amendment, the Tucker DOT continued to secure the Note. The parties agree that the Tucker Note was ultimately paid in full, but dispute whether AMW paid off the Note with his own funds.

## C. Appointment of Co-Trustees

In November 2009, four of the five income beneficiaries of the Trust entered into an agreement, titled "Appointment of Co-Trustee," that provided for AMW's

3

removal as trustee for the Trust and the appointment of him and his son, ADW, as co-trustees.  R. Vol. 3 at 123-28.  As its basis, the document cites Article V, paragraph Q of the Trust Agreement, which provides for removal of a trustee and appointment of a successor trustee upon the written request of not less than three-fourths of the Trust's current income beneficiaries.  AMW, an attorney with more than 40 years of legal experience, also signed the Co-Trustee agreement to accept his appointment as a co-trustee.

### D.  AMW's Marriage to Lipin and Their Actions Regarding the Property

In 2013, AMW's wife, Elizabeth, died, leaving AMW's four adult children as the income beneficiaries of the Trust.  By this time, two of the children and their spouses, Ellen Wisehart, Jacob Kreycik, ADW and his wife, Erin M. Jameson, (collectively "Defendants") lived on the Property.  Then and now, ADW and Erin also operate the Wisehart Springs Inn there.

In March 2015, AMW married the plaintiff-appellant, Joan C. Lipin, a former client who had also worked for him as a paralegal.  Lipin has nearly two decades of experience as an active pro se litigant in federal and state courts in the Northeast, and reports that she is a law school graduate.

Shortly after marrying Lipin, AMW, then a New Jersey resident, sued his sons ADW and Winston and the Wisehart Springs Inn in the United States District Court for the District of New Jersey.  In his pro se complaint, AMW alleged his sons and the Inn had entered into a racketeering enterprise to steal and misappropriate real and personal property belonging to him, including the Property.  *See Wisehart v.*

4

*Wisehart*, No. 15-2768 (ES), 2015 U.S. Dist. LEXIS 172577, at *1-2 (D.N.J. Dec. 29, 2015). The New Jersey district court dismissed the suit for improper venue but allowed AMW to amend his complaint. *See id.* at *15. After AMW did so, the defendants again moved to dismiss for improper venue or to transfer the case to the District of Colorado because the primary focus of the suit is the Property. *See id.*, 2017 WL 2267262, at *3, *4 (D.N.J. May 24, 2017). The New Jersey district court granted the motion to transfer, *see id.* at *4, and this action is currently pending in the United States District Court for the District of Colorado.

Meanwhile, AMW took additional action with respect to the Property after initiating *Wisehart v. Wisehart*. First, in May 2015, AMW recorded two notices in Delta County in which he stated that he was the sole trustee for the Trust and that the Trust had transferred the Property to him by warranty deed. Second, in January 2016 either he or Lipin recorded four quit-claim deeds, one for each parcel of the Property, purporting to convey the Property from AMW to Lipin. AMW did not consult with or notify ADW or his other children in advance of these actions. Notwithstanding these filings, Delta County's property records continue to reflect that the Trust owns the Property.[1]

---

[1] This may be because ADW had previously recorded a "Trust Affidavit" in Delta County in which he reported that he and AMW were co-trustees for the Trust and that "[t]he Trust Agreement requires the signatures of both Trustees to make any transactions on behalf of the Trust." R. Vol. 3 at 129. Colorado law allows trustees to record such a statement of authority with respect to real property held in a trust's name, Colo. Rev. Stat. § 38-30-108.5, and provides that the statement is prima facie evidence of the authority of persons to act on behalf of the trust to convey or otherwise affect title to such property, *see id.* § 38-30-172.

**E. This Action**

In February 2016, Lipin informed Defendants by letter that she owned the Property, that they were trespassing and illegally operating Wisehart Springs Inn there, and that she was listing at least three of the Property's four parcels for sale.[2] ADW, in his capacity as co-trustee for the Trust, responded on March 16, 2016 by filing an action in the Colorado District Court for Delta County (State Court Action) against Lipin and AMW, individually and in his capacity as co-trustee for the Trust, seeking a declaration that AMW's notices and quit-claim deeds regarding the Property were of no effect and that the Trust still owned the Property. Lipin, acting pro se, responded five days later by filing the present action, asserting claims for trespass and ejectment against the Defendants and requesting that the court eject them from the Property and award her $6 million in damages.

Defendants promptly moved to dismiss or stay this action under the *Colorado River* abstention doctrine, which allows a federal court in some circumstances to dismiss or stay a federal action in deference to a pending parallel state court proceeding. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). The magistrate judge recommended that the district court grant the motion for reasons of judicial economy. But several months later the district court rejected this recommendation and denied Defendants' motion upon determining that in the interim the state court clerk had entered default against AMW and Lipin (who are appearing

---

[2] The Delta County assessor reportedly valued the Property at this time at approximately $738,000. R. Vol. 3 at 108.

6

pro se there) because, though they were heavily engaged in the State Court Action, they had opted not to file a responsive pleading. The district court reasoned that if and when the state court entered default judgment, this judgment likely would not have preclusive effect, thereby negating the judicial economy of deferring to the State Court Action.[3]

In September 2017, Lipin moved for summary judgment on her claims. Defendants responded and also filed a cross-motion for summary judgment. Both of Defendants' filings were supported by an affidavit by Rebecca W. Geyer, a licensed Indiana attorney and board-certified trust and estate specialist (Geyer Affidavit).

In February 2018, the district court denied Lipin's summary judgment motion, granted Defendants' cross-motion, and entered judgment for Defendants. In doing so, the court found there were no material disputed facts and that as a matter of law AMW and ADW were co-trustees of the Trust pursuant to the Appointment of Co-Trustee document and that AMW had no right as a co-trustee to convey the Property to himself individually. It further found that even if AMW were the sole trustee, as Lipin argued, he still lacked authority to convey the Property out of the Trust because by the terms of the Trust Agreement his power to appoint Trust assets to himself only applied to any amount over $1 million that was in the Trust as of the date of Dorothy Wisehart's death. The district court based these conclusions in part

---

[3] A year and a half later, the State Court Action is still pending, and though AMW and Lipin remain in default, they are actively engaged in challenging the proceedings at the trial court and appellate levels.

on the opinions and reasoning included in the Geyer Affidavit. In accordance with these conclusions, the district court held the Trust continued to own the Property because AMW held no interest in it when he quit-claimed his interest to Lipin in 2016. As a result, the district court held, Lipin's trespass and ejectment claims necessarily failed and Defendants were entitled to summary judgment. The district court entered final judgment against Lipin the same day.

Lipin immediately filed a notice appealing the district court's judgment. This appeal was docketed as No. 18-1060. A month later, Lipin filed a motion to recuse the district court judge for bias based largely on statements included in his post-judgment order denying Defendants' motion to recover expert witness fees. After the district court denied her motion, Lipin filed a second notice of appeal, docketed as No. 18-1176, this time naming the district court's recusal order, its order denying Defendants' expert fee motion, and its refusal to disqualify and impose sanctions on Defendants' counsel and take other actions she had requested earlier in the case. At Defendants' request, we consolidated Lipin's appeals. But because Lipin had already filed her opening brief in No. 18-1060, we allowed her to file a supplemental brief limited only to the issues she sought to appeal in No. 18-1176. We also directed her not to repeat arguments included in her opening brief. Lipin did not comply with these directions in her supplemental brief.

## DISCUSSION

Lipin has filed over 100 pages of argument in connection with her consolidated appeals, much of which is rambling, disjointed and irrelevant to the

proceedings in this case. To the extent we can discern them, we address the relevant

issues Lipin raised on appeal below.[4]

## A. Summary Judgment Decision

We review the district court's grant of summary judgment to Defendants

de novo, viewing the factual record and making reasonable inferences from it in the

light most favorable to Lipin as the non-moving party. *Bird v. W. Valley City*,

832 F.3d 1188, 1199 (10th Cir. 2016). "The court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute

is genuine when the evidence is such that a reasonable jury could return a verdict for

the nonmoving party, and a fact is material when it might affect the outcome of the

suit under the governing substantive law." *Bird*, 832 F.3d at 1199 (brackets and

internal quotation marks omitted).

Lipin argues the district court's grant of summary judgment to Defendants

must be reversed for several reasons, all of which are meritless. First, she asserts

reversal is required because the district court improperly considered and relied on the

---

[4] We ordinarily construe arguments by pro se parties liberally, recognizing that they should held to a less stringent standard than formal arguments drafted by lawyers. *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But we do not extend this liberal construction to attorneys who choose to represent themselves, *see Comm. on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007), which is pertinent here because Lipin claims to be an attorney. But the choice between liberal or standard construction of her arguments is of no consequence in this case, because our conclusions regarding her arguments would be the same under either construction.

Geyer Affidavit. In her affidavit, Geyer opined, among other things, that under the terms of the Trust Agreement and Indiana law: (1) the 2009 appointment of AMW and ADW as co-trustees was valid; (2) Indiana law requires co-trustees to act jointly and thus AMW could not convey the Property out of the Trust without ADW's approval; and (3) even if AMW was the sole trustee of the Trust, he did not have general power of appointment or other authority under the Trust Agreement to transfer Trust assets, including the Property, to himself. Geyer did not provide any opinions regarding Colorado law. She also described the factual and legal basis for each of her opinions, identified her factual assumptions, and provided a copy of her curriculum vitae as part of her affidavit.

Lipin asserts the Geyer Affidavit was "inadmissible, unethical, and fraudulent" and therefore should not have been considered by the district court. Aplt. Suppl. Br. at 19. In support of these claims, Lipin argues primarily that: (1) Geyer's opinions are irrelevant to her trespass and ejectment claims; (2) Geyer improperly relied on Indiana law in opining on Trust issues; (3) Geyer is not qualified to opine on trespass and ejectment under Colorado law; and (4) Geyer improperly relied on fraudulent Delta County property records. Lipin also asserts the district court should not have considered the Geyer Affidavit because Defendants failed to disclose Geyer as an expert witness or identify the facts and data on which she relied as required by Fed. R. Civ. P. 26(a)(2)(A).

These arguments fail on multiple grounds, beginning with the fact that Lipin did not present them to the district court or make any other challenge there to the

10

district court's consideration of the Geyer Affidavit.[5] Lipin also does not argue plain error in the district court's consideration of the Affidavit.[6] In these circumstances, we ordinarily do not consider the newly raised issue on appeal. *See, e.g.*, *Margheim v. Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017) ("Normally when a party presents a new argument on appeal and fails to request plain error review, we do not address it."); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130-31 (10th Cir. 2011) (explaining that the failure to argue plain error "marks the end of the road for an argument for reversal" presented for the first time on appeal).

Second, even if Lipin had properly preserved her arguments regarding the Geyer Affidavit for appeal, she failed to adequately present these issues for our review. Fed. R. App. P. 28 required Lipin to include in her opening brief a statement of her "contentions and the reasons for them, with citation to the authorities and parts of the record on which [she] relies." Fed. R. App. P. 28(a)(8)(A). Lipin did not comply with

---

[5] Although Lipin mentioned the Geyer Affidavit in her response to Defendants' cross-motion, she only alleged there that Geyer made misstatements in her factual assumptions because she relied on altered Delta County property records and non-certified information in a title report for the Property. *See* R. Vol. 3 at 6-7. Lipin did not include any argument on the admissibility or validity of Geyer's opinions in light of these or any other allegations. As discussed below, Lipin also errs in alleging that Geyer relied on these documents.

[6] Although Lipin freely uses the term "plain error" in referring to this issue in her opening brief, she does not present argument, reasoned or otherwise, attempting to show that the district court committed plain error in its consideration of the Geyer Affidavit. *See United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017) (defining "plain error" as "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings" (internal quotation marks omitted)).

11

these requirements in her arguments concerning the Geyer Affidavit because her arguments are conclusory, devoid of reasoning, and not supported by citations to relevant legal authority or portions of the record. *See, e.g., Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1370 (10th Cir. 2015) ("A brief must contain an argument consisting of more than a generalized assertion of error, with citations to supporting authority." (brackets and internal quotation marks omitted)); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (holding issues are inadequately briefed if they are supported by "conclusory allegations with no citations to the record or any legal authority"). We deem such inadequately briefed arguments waived and generally do not review them on appeal. *See, e.g.*, *Nixon*, 784 F.3d at 1368 (arguments "not adequately developed in a party's [opening] brief" are waived); *Garrett*, 425 F.3d at 841 (same).

Finally, even if we were to overlook these deficiencies, Lipin's challenges to the Geyer Affidavit and the district court's consideration of it are substantively meritless. For example, Lipin's contention that Geyer's opinions are irrelevant to this action is meritless on its face because her alleged ownership of the Property depends on AMW's authority to convey the Property out of the Trust to himself. Her assertion that Geyer improperly relied on Indiana law is meritless in light of the Trust Agreement's express provision that issues concerning it should be determined under Indiana law.[7] Lipin's claim that Geyer was unqualified to opine on the issues she

_____

[7] Lipin declares that New York law instead governs Trust issues, because Dorothy allegedly moved to New York before her death and executed an unrelated

12

addressed because she is not licensed in Colorado or an expert on Colorado property conveyance law is similarly meritless.

Lipin suggests the factual assumptions Geyer reported in stating her opinions are inaccurate, but she does not deny any particular assumed fact or direct us to evidence disputing any of them.[8] She is also mistaken in asserting that Geyer relied on Delta County's property records, improperly or otherwise, because Geyer neither referenced nor relied on these documents (except to state the Property's assessed value) in her opinions or factual assumptions. Lipin's further assertion that the district court erred in considering the Geyer Affidavit because Defendants failed to disclose Geyer as an expert witness in accordance with Fed. R. Civ. P. 26(a)(2)(B) also has no support in the record, which in fact shows that Defendants disclosed Geyer, her opinions and other required information in accordance with this rule on October 11, 2017, the deadline the district court had set for expert witness disclosures.[9]

---

amendment to the Trust Agreement there, but provides no authority that these circumstances overcome Dorothy's clearly expressed intent in the Trust Agreement that Indiana law would apply.

[8] The factual assumptions Geyer reported concerned the Wisehart family tree, the dates on which relevant events occurred, the assessed value of the Property, whether the Trust- and Property-related documents Geyer reviewed were true and accurate copies of the original documents, and whether any of the relevant parties had taken specified actions that might affect her opinions.

[9] Contrary to Lipin's unsupported claims, it is of no consequence that this expert witness disclosure, which consisted almost entirely of the Geyer Affidavit and its attachments, occurred nine days after Defendants provided these same materials to Lipin with their response to her summary judgment motion and their cross-motion.

13

Lipin's other challenges to the district court's summary judgment decision are equally unsupported and meritless. Her assertion that the district court's Property ownership determination is irrelevant to her trespass and ejectment claims is spurious,[10] as is her claim that the district court's summary judgment decision was contrary to its earlier decision denying Defendants' motion to dismiss. Her claim that the 2009 appointment of ADW as a co-trustee was legally flawed or invalid as a result of fraud was properly rejected by the district court because it is not supported by evidence or a plain reading of the Trust Agreement and Appointment of Co-Trustee document. We also agree with the district court that Lipin's claim that AMW acquired title to the Property in 2001 by personally paying off the Tucker Note is factually unsupported (and Defendants also dispute AMW's payment), but more importantly is immaterial because Lipin fails to provide any reasoned argument or authority that title to the Property would transfer from the Trust to AMW individually simply because he paid off the Note. We also see nothing in the Tucker Amendment, the vehicle by which AMW agreed to pay the Note, that supports Lipin's contention.

Finally, we reject Lipin's most recent argument challenging the district court's summary judgment decision, which is that the Trust never owned the Property at all because the 1992 conveyance of the Property from Morning Sun to the Trust was a

---

[10] Proof of ownership is an element of Lipin's trespass claim, *see Hoery v. United States,* 64 P.3d 214, 217 (Colo. 2003), as well as her common law ejectment claim, *see French v. Golston*, 100 P.2d 581, 583 (Colo. 1940) ("It is fundamental that a plaintiff in ejectement [sic] must recover, if at all, on the strength of his own title").

"fraudulent-transfer." *See* Aplt. Reply Br. at 18. This argument fails for various reasons, including that: (1) Lipin did not present it in her summary judgment argument to the district court; (2) she improperly raised it for the first time in this court in her reply brief, *see, e.g.*, *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (holding party "waived []his contention by waiting to present it for the first time in his reply brief"); and (3) Lipin provides no factual or legal support for her new argument; which is (4) inconsistent with her representations earlier in this action, *see* R. Vol. 2 at 5, 9 (Lipin identifies the Property's conveyance from Morning Sun to the Trust as an undisputed fact).

Lipin mentions other various challenges to the district court's grant of summary judgment in her briefs, which we also find to be meritless. Accordingly, we affirm the district court's determination that the Trust owns the Property and its grant of summary judgment to Defendants and against Lipin on this basis.[11]

**B. Other Issues on Appeal**

We also find no merit in Lipin's other arguments on appeal.

Lipin contends the district court violated her due process rights because it never ruled on her April 10, 2017 motion requesting, among other things, that Defendants' answer be stricken and that default be entered against them. This contention is meritless, because the district court denied Lipin's motion making these

---

[11] Because we affirm the district court on this ground, we need not reach the additional arguments Defendants advance in support of affirmance.

requests in an order entered on April 28, 2017.[12] Her claim that her due process rights were violated by the district court's denial of her other four motions for entry of default and default judgment fails because Defendants had timely filed a motion to dismiss or answer in each instance.

Lipin also argues the district court erred in denying her post-judgment motion that it recuse itself for bias pursuant to 28 U.S.C. § 455(a). We find no abuse of discretion in this decision. *See United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993) (stating standard of review). Contrary to Lipin's claims, we see nothing in the district court's order denying Defendants' expert witness fee motion that calls its impartiality into question. The same is true with respect to its decision to disregard Lipin's lengthy diatribe against Defendants' counsel in her opposition to Defendants' fee motion, as the district court correctly held these arguments were not germane to the issue before it, which was whether the requested fees should be awarded. And, of course, the district court's entry of summary judgment against Lipin, and her disagreement with this ruling, are insufficient to establish bias. *See, e.g.*, *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

---

[12] This text-only order specified that it denied Docket Entry No. 54, *see* R. Vol. 1 at 6 (Apr. 28, 2017 Order docketed at ECF No. 57), which was Lipin's combined motion to vacate the scheduling order, strike Defendants' answer and enter default against all Defendants, *see id.* (Apr. 10, 2017 Motion docketed at ECF No. 54); Suppl. R. Vol. 3 at 13. Lipin is incorrect in assuming that the abbreviation of her motion's lengthy title to "Motion to Vacate" in the April 28, 2017 docket entry for the order denying her motion signifies that the court only denied a portion of her motion.

16

Lipin further contends the district court committed plain error in failing to disqualify Defendants' counsel and sanction him personally for various alleged misdeeds. The short answer to this argument is that Lipin never filed a motion seeking to disqualify or sanction Defendants' counsel.[13] Instead, she made these requests in her opposition to Defendants' post-judgment fee motion, which the district court properly disregarded as described above, and in a later-filed "Declaration" in which she attacked her own attorney of record as well as Defendants' counsel. In the absence of a motion, we find no error in the district court's failure to act on this request.[14] *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by a motion."); *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (denying request contained in response to motion because it was not a proper written motion).

**DEFENDANTS' REQUEST FOR SANCTIONS**

In their response brief, Defendants request that we find Lipin's appeals to be frivolous under Fed. R. App. P. 38 and impose monetary sanctions against her,

---

[13] We also note that Lipin's accusations against Defendants' counsel are deficient because they are conclusory and not supported by evidence or relevant authority.

[14] In addition, to the extent Lipin's declaration could be construed as a motion to disqualify and sanction Defendants' counsel, the district court likely lacked jurisdiction to address it because it was filed after her first notice of appeal and on the same day as her second notice, in which she sought appellate review of the district court's failure to take these actions against Defendants' counsel. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

17

including an award of their reasonable attorney fees.[15] Fed. R. App. P. 38 authorizes a court of appeals to award "just damages and single or double costs to the appellee" if it determines an appeal is frivolous. An appeal is frivolous under Rule 38 "when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc) (internal quotation marks omitted). Sanctions are imposed under Rule 38 "to penalize an appellant who takes a frivolous appeal and to compensate the injured appellee for the delay and added expense of defending the district court's judgment." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987). "Just damages" under Rule 38 therefore may include attorney fees, *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1026 (10th Cir. 2017), though we may also "award a fixed amount reflecting an appropriate penalty rather than a precise sum based upon proof of the appellee's actual attorney fees," *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1581-82 (Fed. Cir. 1991) (awarding appellee a fixed sum to spare it and the court from additional litigation regarding the amount of attorney fees). Lipin's status as a

---

[15] Defendants also request sanctions under 10th Cir. R. 46.5, which authorizes monetary sanctions and an award of reasonable attorney fees against any person, including an unrepresented party, who signs a paper that violates the required certifications that the paper is not being presented for any improper purpose, the issues presented are warranted by existing law or a nonfrivolous argument for changing existing law, and that factual contentions or denials presented in the paper are supported by the record. *See* 10th Cir. R. 46.5(B), (C). We need not consider sanctions pursuant to this rule if we find sanctions are warranted under Fed. R. App. P. 38.

pro se litigant does not insulate her from the imposition of sanctions under this rule. *See, e.g.*, *Wheeler v. Comm'r*, 521 F.3d 1289, 1291-92 (10th Cir. 2008).

We have no difficulty concluding Lipin's appeals are frivolous under Rule 38. As discussed above, her arguments on appeal are wholly without merit. In addition, Lipin devotes a substantial portion of her three briefs to unsupported and often irrelevant accusations that Defendants, AMW's other children, and their different attorneys in this action, the State Court Action, and the federal *Wisehart v. Wisehart* action engaged in fraud, forgery, unethical filings, abuse of the judicial process, obstruction of justice, vexatious litigation, and/or violations of Lipin's constitutional rights by defending themselves against Lipin and AMW's claim that Lipin owns the Property. Further, Lipin included in her briefing numerous accusations against Defendants and AMW's other children that have nothing to do with the Property or this action at all. These arguments are unsupported, abusive, and irrelevant to this appeal, and provide additional grounds for our finding that Lipin's appeals are frivolous.

Before we can impose sanctions for a frivolous appeal, the person who may be subject to sanctions must receive notice that sanctions are being considered and an opportunity to respond. *Braley*, 832 F.2d at 1514-15; *see* Fed. R. App. P. 38 (stating court may award sanctions "after a separately filed motion or notice from the court and reasonable opportunity to respond"). Because Defendants did not present their request for sanctions in a separately filed motion, Lipin has not had an opportunity to respond to their request. We could provide such an opportunity by ordering Lipin to

19

show cause as to why we should not sanction her under Rule 38, but we would also like to receive additional information from Defendants to help inform our sanctions decision.

Accordingly, we invite Defendants to file a separate motion for sanctions against Lipin under Rule 38 no later than fifteen days from the date of this order and judgment. In this motion, Defendants should describe in general terms the amount and nature of the costs and legal fees they incurred in defending these appeals, but they need not provide an itemization of the tasks undertaken or the fees requested. Lipin shall have fifteen days from the date Defendants file a motion for sanctions to show cause why she should not be sanctioned. Defendants and Lipin shall comply with the length limits in Fed. R. App. P. 27(d)(2) in these filings and need not provide hard copies of them.

## CONCLUSION

The district court's judgment is AFFIRMED. Defendants are invited to move for an award of sanctions against Lipin as described above. Lipin's May 7, 2018 "Request That Judicial Notice Be Taken of the 'Brake-Pad' the District Court Judge Directed the Clerk of Court to Send to Appellant on May 2, 2018, With Intent to Intimidate Joan C. Lipin in the Aforesaid Appeals," is DENIED.

Entered for the Court
Per Curiam

20